*In re* ASF

Docket No. 324821. Submitted July 7, 2015, at Detroit. Decided July 14, 2015, at 9:20 a.m.

Petitioners Samuel and Janet Spann sought to adopt Samuel's granddaughter, ASF. After the superintendent of the Michigan Children's Institute (MCI) denied petitioners consent to adopt, petitioners moved in the Wayne Circuit Court Family Division for a hearing under MCL 710.45 (§ 45 hearing) on the basis of their contention that the superintendent's decision was arbitrary and capricious. Petitioners also claimed that the circuit court's refusal to allow ASF's lawyer-guardian ad litem (LGAL) to fully present her evidence at the hearing constituted a violation of ASF's rights to due process and equal protection. The court, Christopher D. Dingell, J., affirmed the superintendent's denial of consent because petitioners failed to prove by clear and convincing evidence that the denial was arbitrary and capricious. The LGAL appealed, and petitioners cross-appealed.

The Court of Appeals *held*:

1. The trial court properly granted the MCI's motion for involuntary dismissal of petitioners' cross-appeal—without allowing the LGAL to present her evidence—because MCR 2.504(B)(2) authorizes a trial court to dismiss petitioners' claim after the plaintiff (in this case, petitioners) presents his or her evidence, and the court determines, based on the facts and the law, that the plaintiff has no right to relief. The trial court considered the evidence presented by petitioners and determined that they had not proved by clear and convincing evidence that the superintendent's denial of consent to adopt was arbitrary and capricious. The LGAL objected to the dismissal on the basis that it was premature because she had not been permitted to introduce her evidence in its entirety. However, there exists no statutory authority guaranteeing an LGAL the right to fully participate in a § 45 hearing. A petitioner must initiate a § 45 hearing and claim that the superintendent's decision to withhold consent was arbitrary and capricious, and the petitioner bears the burden of proving that the superintendent's denial of consent was arbitrary and capricious. Petitioners failed to satisfy their

burden of proof, and therefore, the trial court was completely within its authority to grant the MCI's motion for involuntary dismissal after the close of petitioners' case.

2. The trial court applied the correct standard to its review of the superintendent's decision to deny petitioners consent to adopt. The proper standard to apply when determining if a superintendent's denial of consent to adopt was arbitrary and capricious is whether the petitioner can prove by clear and convincing evidence that there was no good reason to deny consent. It is of no moment that there existed good reasons for granting the consent; the question is whether there existed a good reason for withholding consent. In this case, the trial court noted several reasons supporting the superintendent's denial of consent: (1) the identification of other suitable relatives as potential adoptive parents, (2) Samuel's and Janet's ages when compared to ASF's age, (3) the possibility that each petitioner could maintain a relationship with ASF and assume the role of a grandparent, (4) the condition of petitioners' health, and (5) Samuel's lack of commitment to parenting ASF. The superintendent had more than one good reason for withholding from petitioners the consent to adopt ASF. When there exist both good reasons to grant consent and good reasons to deny it, a superintendent's decision to withhold consent cannot be considered arbitrary and capricious, even if another person would have decided the matter differently.

3. The trial court properly concluded that the superintendent's denial of consent did not violate petitioners' civil rights because the superintendent's decision was not based solely on petitioners' ages, which is conduct prohibited by the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*. The superintendent noted that Samuel was age 71 and Janet was age 65 at the time of the § 45 hearing, and ASF was age 4. The superintendent also emphasized, as did the trial court, that Samuel himself expressed doubt about petitioners' ability to care for ASF until she reached age 18. Importantly, the superintendent's consideration of petitioners' ages was only one of several reasons he denied petitioners the consent to adopt ASF. Even though the superintendent considered the petitioners' ages in making his decision to deny consent, his decision did not solely rely on their ages, and so did not violate the Civil Rights Act.

Affirmed.

*Evelyn K. Calogero* for petitioners.

*Laura Dunbar Kellett*, lawyer-guardian ad litem, and *Hugh R. Marshall* for ASF.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Matthew Schneider*, Chief Legal Counsel, and *Chantal B. Fennessey*, Assistant Attorney General, for the Michigan Children's Institute.

Before: HOEKSTRA, P.J., and JANSEN and METER, JJ.

PER CURIAM. Petitioners Samuel Spann and Janet Spann, the grandparents of the minor child ASF, sought to adopt ASF after the parental rights of ASF's biological parents were terminated. The superintendent of the Michigan Children's Institute (MCI) withheld consent to adopt. Petitioners challenged the superintendent's decision in circuit court. After conducting a hearing pursuant to MCL 710.45(2) (§ 45 hearing), the circuit court found that the superintendent's decision was not arbitrary and capricious, and accordingly, the circuit court upheld that decision. The lawyer-guardian ad litem (LGAL) for the minor child appeals the circuit court's decision, and petitioners have filed a cross-appeal also challenging the circuit court's decision. Because the trial court did not clearly err by concluding that petitioners failed to present clear and convincing evidence demonstrating that the superintendent's decision was arbitrary and capricious, we affirm.

In January 2011, ASF and her biological sister, SF,[1] were removed from their mother's care for a variety of reasons and they were placed with petitioners, who

---

[1] Petitioners pursued a guardianship of SF, and that guardianship is not at issue in this appeal. Another of ASF's siblings was adopted at birth by ASF's aunt and resides in Arizona.

became licensed foster parents. Samuel is ASF's maternal grandfather and Janet is his wife, but she is not a blood relative of ASF or SF. ASF was 9 months old at the time of her placement with petitioners, and SF was 11 years old. Although reunification services were provided, ASF's biological parents made no progress in their treatment plans, and their parental rights were terminated in April 2013.

By all accounts, petitioners took excellent care of SF and ASF for a number of years, and once termination of parental rights occurred, the adoption agency began to plan for petitioners' adoption of ASF. In July 2013, however, Samuel contacted the adoption worker and suggested his son, Damon, and daughter-in-law, Julie, as alternate potential adoptive parents, citing his age and his uncertainty about his own ability to provide long-term care for ASF. Damon, who was in his mid-40s, and his wife, Julie, had a young son who was six months older than ASF.

At a family team meeting held a short time later, Samuel reversed his position and indicated that he now wanted to proceed with the adoption of ASF. But in light of the offer of Damon and Julie as adoptive parents for ASF, and their expression of interest, the agency treated the case as a competing-party adoption. Unfortunately, as a result of this conflict, the relationship between petitioners and Damon and Julie became strained.

After conducting an adoption assessment, the adoption worker, Samantha Slack, recommended that petitioners' request for consent to adopt be denied. A case conference was held, but the adoption agency, Bethany Christian Services (BCS), again recommended that consent to adopt be denied. BCS recommended that consent to adopt be given to Damon and Julie. The BCS

recommendation was sent to the MCI superintendent, and he denied petitioners' request for consent to adopt ASF.[2] When considering the request for consent to adopt, the superintendent weighed, among many factors, the following: (1) petitioners' ages, particularly the significant age difference between petitioners and ASF, (2) petitioners' minor health issues, (3) Samuel's vacillation regarding the adoption and his recommendation of Damon and Julie as adoptive parents, (4) ASF's sibling relationship with SF, (5) the potential for a companion relationship between ASF and Damon's son, (6) the psychological ties between ASF and petitioners, and (7) the potential for each petitioner to continue his or her relationship with ASF by assuming the role of a grandparent.

After the superintendent denied consent to the adoption, petitioners filed a motion in circuit court challenging the superintendent's decision. See MCL 710.45. The circuit court conducted a § 45 hearing at which petitioners testified and called the MCI superintendent to testify. The LGAL was permitted to participate in the proceedings by cross-examining witnesses and participating in arguments. After petitioners rested their case, the LGAL was also able to call Slack, the adoption worker, to testify. The MCI moved for involuntary dismissal pursuant to MCR 2.504(B), and the circuit court granted the motion over the LGAL's objection. The court concluded that petitioners failed to demonstrate by clear and convincing evidence that the MCI superintendent's decision to

---

[2] The superintendent "represent[s] the state as guardian of each child committed" to the MCI following termination of parental rights, MCL 400.203(1), and the superintendent "has the power to make decisions on behalf of a child committed to the [MCI]." MCL 400.203(2). The superintendent's specific authority to consent to the adoption of a child is set forth in MCL 400.209(1).

withhold consent to adopt was arbitrary and capricious. From this decision, the LGAL and petitioners now appeal.[3]

On appeal, the LGAL and petitioners argue that the trial court clearly erred under MCR 2.504(B)(2) by granting the MCI's motion for involuntary dismissal. Petitioners first contend that the trial court's decision must be reversed because the trial court failed to make specific findings of fact and conclusions of law as required by MCR 2.517(A)(1). See MCR 2.504(B)(2). Petitioners further argue that the superintendent's decision to deny consent was arbitrary and capricious

---

[3] On appeal, the MCI challenges this Court's jurisdiction over the case. As a general matter, this Court has subject-matter jurisdiction over appeals from a trial court's decision on a motion under MCL 710.45. MCL 710.45(10). The MCI claims, however, that the LGAL is not an appropriate party to bring an appeal under MCL 710.45(10), and that because the LGAL lacks statutory standing, this Court lacks jurisdiction. See *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 355; 833 NW2d 384 (2013). Although the appeal was initiated by the LGAL, petitioners timely filed a cross-appeal. MCR 7.207(A)(2) and (B)(1). A cross-appeal may be prosecuted to its conclusion even if this Court dismisses the initial appeal. MCR 7.207(D). Thus, at a minimum, even supposing the LGAL lacked standing to initiate the present appeal, petitioners' cross-appeal is properly before this Court. See MCL 710.45(10). Moreover, although the LGAL for an adoptee under the age of 14 is not considered an "interested party" in adoption proceedings, MCL 710.24a(1), ASF was appointed an LGAL during child abuse and neglect proceedings, MCL 712A.17c(7), and an LGAL appointed in this manner continues to represent the child's best interests provided that, as in this case, the child remains subject to the supervision of the MCI. MCL 712A.17c(9). During this time, the LGAL must advocate for the child's best interests, and the LGAL is "entitled to full and active participation in all aspects of the litigation . . . ." MCL 712A.17d(1)(b). There is no indication that the LGAL in this case was discharged. Consequently, in connection with petitioners' appeal, we see nothing improper with the LGAL's continued participation insofar as she represents the child's best interests. Therefore, we will consider the LGAL's arguments. See, generally, MCL 710.45(5); MCL 712A.17c(9); MCL 712A.17d.

because there were no "good reasons" to withhold consent, the superintendent failed to consider ASF's individual circumstances, and the denial amounted to discrimination against petitioners based solely on their ages. In addition, the LGAL similarly asserts that the superintendent's decision was arbitrary and capricious because he failed to consider, or to adequately consider, ASF's unique circumstances, including, for example, her attachment to petitioners and to SF, as well as the tension between petitioners and Damon. The LGAL also maintains that granting the MCI's motion for involuntary dismissal was premature because the LGAL was not given a full opportunity to present her own evidence regarding the purportedly arbitrary and capricious nature of the superintendent's decision. According to the LGAL, denying her a full opportunity to participate in the proceedings also denied ASF her rights to due process and the equal protection of the law.

This Court reviews de novo questions of law, including the interpretation and application of court rules and statutes. *Nat'l Waterworks, Inc v Int'l Fidelity & Surety, Ltd*, 275 Mich App 256, 258; 739 NW2d 121 (2007). A trial court's decision to dismiss an action under MCR 2.504 is reviewed for clear error. *Rodenhiser v Duenas*, 296 Mich App 268, 272; 818 NW2d 465 (2012). A trial court's finding is clearly erroneous when, although there is evidence to support it, "the reviewing court . . . is left with the definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citation omitted). Whether a trial court applied the correct standard to its review of the superintendent's denial of consent to adopt poses a question of law that we review for clear legal error. *In re Keast*, 278 Mich App 415, 423; 750 NW2d 643 (2008).

Under MCR 2.504(B)(2), involuntary dismissal of a hearing tried without a jury is appropriate when, after the presentation of the plaintiff's evidence, the court determines, based on the facts and the law, that the plaintiff has no right to relief.[4] *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995). In full, MCR 2.504(B)(2) states:

> In an action, claim, or hearing tried without a jury, after the presentation of the plaintiff's evidence, the court, on its own initiative, may dismiss, or the defendant, without waiving the defendant's right to offer evidence if the motion is not granted, may move for dismissal on the ground that, on the facts and the law, the plaintiff has no right to relief. The court may then determine the facts and render judgment against the plaintiff, or may decline to render judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in MCR 2.517.

Under this rule, "a motion for involuntary dismissal calls upon the trial judge to exercise his function as trier of fact, weigh the evidence, pass upon the credibility of witnesses and select between conflicting inferences." *Marderosian v Stroh Brewery Co*, 123 Mich App 719, 724; 333 NW2d 341 (1983). The plaintiff is not entitled to the most favorable interpretation of the evidence. *Id.*

In the instant action, petitioners sought relief under MCL 710.45, which allows a petitioner to challenge the superintendent's withholding of consent to an adoption. Accordingly, the MCI's motion for involuntary dismissal under MCR 2.504(B)(2) was properly granted if, during their presentation of evidence, peti-

---

[4] The Michigan Court Rules apply to adoption proceedings, except as modified by MCR 3.801 to MCR 3.807. MCR 3.800(A). Those rules do not contain a specific provision regarding involuntary dismissal.

tioners failed to demonstrate their entitlement to relief under MCL 710.45. In relevant part, MCL 710.45 provides:

(1) A court shall not allow the filing of a petition to adopt a child if the consent of a representative or court is required by [MCL 710.43(1)(b), (c), or (d)] unless the petition is accompanied by the required consent or a motion as provided in subsection (2).

(2) If an adoption petitioner has been unable to obtain the consent required by [MCL 710.43(1)(b), (c), or (d)] of this chapter, the petitioner may file a motion with the court alleging that the decision to withhold consent was arbitrary and capricious. A motion under this subsection shall contain information regarding both of the following:

(a) The specific steps taken by the petitioner to obtain the consent required and the results, if any.

(b) The specific reasons why the petitioner believes the decision to withhold consent was arbitrary and capricious.

* * *

(7) Unless the petitioner establishes by clear and convincing evidence that the decision to withhold consent was arbitrary and capricious, the court shall deny the motion described in subsection (2) and dismiss the petition to adopt.

(8) If the court finds by clear and convincing evidence that the decision to withhold consent was arbitrary and capricious, the court shall issue a written decision and may terminate the rights of the appropriate court, child placing agency, or department and may enter further orders in accordance with this chapter or [MCL 712A.18] as the court considers appropriate. In addition, the court may grant to the petitioner reimbursement for petitioner's costs of preparing, filing, and arguing the motion alleging the withholding of consent was arbitrary and capricious, including a reasonable allowance for attorney fees.

As these provisions make plain, to obtain relief under MCL 710.45 at a § 45 hearing, petitioners bore the burden of establishing, by clear and convincing evidence, that the superintendent's denial of consent was arbitrary and capricious. MCL 710.45(7). In other words, the family court is not permitted to decide the issue of adoption de novo; rather, "a family court's review of the superintendent's decision to withhold consent to adopt a state ward is limited to determining whether the adoption petitioner has established clear and convincing evidence that the MCI superintendent's withholding of consent was arbitrary and capricious." *Keast*, 278 Mich App at 423. The clear and convincing evidence standard is "the most demanding standard applied in civil cases . . . ." *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995). Under this standard, evidence is clear and convincing when it

> produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*Id.* (quotation marks and citation omitted).]

Whether action is arbitrary and capricious is evaluated as follows:

> The generally accepted meaning of "arbitrary" is "determined by whim or caprice," or "arrived at through an exercise of will or caprice, without consideration or adjustment with reference to principles, circumstances, or significance, . . . decisive but unreasoned." The generally accepted meaning of "capricious" is "apt to change suddenly; freakish; whimsical; humorsome." [*Keast*, 278 Mich App at 424-425 (quotation marks and citations omitted).]

To decide whether a denial of consent to adopt was arbitrary and capricious, a trial court initially focuses

on the reasons for withholding consent to the adoption. *Id.* at 425. "It is the absence of any good reason to withhold consent, rather than the presence of good reasons to grant it, that indicates that the decision maker has acted arbitrarily and capriciously." *Id.*

> Thus, the focus is not whether the representative made the "correct" decision or whether the probate judge would have decided the issue differently than the representative, but whether the representative acted arbitrarily and capriciously in making the decision. Accordingly, the hearing under § 45 is not . . . an opportunity for a petitioner to make a case relative to why the consent should have been granted, but rather is an opportunity to show that the representative acted arbitrarily and capriciously in withholding that consent. It is only after the petitioner has sustained the burden of showing by clear and convincing evidence that the representative acted arbitrarily and capriciously that the proceedings may then proceed to convincing the probate court that it should go ahead and enter a final order of adoption. [*In re Cotton*, 208 Mich App 180, 184; 526 NW2d 601 (1994).]

In the present case, among the superintendent's reasons for denial of consent were the following: (1) the identification of Damon and Julie as "suitable" relatives who were "very appropriate" and willing to adopt ASF, (2) the ages of Samuel (age 71) and Janet (age 65) in relation to ASF (then age 4), particularly when Samuel had expressed doubts about petitioners' ability to parent ASF into the future, (3) there remained the possibility that each petitioner could assume a grandparent role to ASF if she were to be adopted by Damon and Julie, (4) petitioners' health conditions, including diabetes and hypertension, as well as SF's health concerns that required "close monitoring," and (5) Samuel's lack of steady commitment to parenting ASF for the next 14 years as evinced by his vacillation on the adoption and

his identification of Damon and Julie as a better alternative.

When reviewing the reasons given by the superintendent, the trial court determined that there was not clear and convincing evidence that these reasons were arbitrary and capricious, and for this reason the trial court granted the MCI's motion for involuntary dismissal. The trial court explained:

> The initial focus is whether the MCI superintendent acted arbitrarily and capriciously. I'm not supposed to focus on what reasons existed to authorize adoptions. I'm deeply impressed that Janet and Sam Spann are wonderful people. They did a wonderful job with the child. But what I have to decide is whether there's the absence of any good reason to withhold consent.

> \* \* \*

> Well, motion [for involuntary dismissal] granted. [The superintendent] had reasons for doing what he did. I've held four or five now Section 45 hearings, and there are times when I wish he would have considered factors that he didn't and factors that he considered that I didn't think were that important but he did think they were that important. I believe that [the superintendent] acted within the law. He did have a focus on the ages of the parents [sic]. I don't believe it's unconstitutional for him to have considered it but he did.

> He was very worried that the abilities of Sam and Janet Spann would not be up to the needs of the child in ten years. He worries about the commitment that Mr. Spann had. And he did have the feeling that the relationship between Sam and Janet Spann would continue in some form. I cannot say there's the absence of any good reason to withhold consent.

In reviewing the trial court's assessment of the superintendent's decision, we initially note that, con-

trary to petitioners' arguments on appeal, the trial court made findings of fact and conclusions of law as required by MCR 2.517. The trial court plainly applied the correct legal standard to its review of the superintendent's decision, recognizing that the focus was on the reasons for denial and whether those reasons were arbitrary and capricious. See *Keast*, 278 Mich App at 425. Further, as a factual matter, the trial court clearly identified the superintendent's primary reasons for denial: Samuel's vacillation on the adoption, petitioners' potential difficulty parenting ASF into the future, and the availability of another relative to adopt ASF that would allow ASF to continue a relationship with petitioners as her grandparents. While the trial court's explanation was relatively concise, the trial court was plainly aware of the issues involved and its "[b]rief, definite, and pertinent findings and conclusions" regarding these issues were sufficient "without over-elaboration of detail or particularization of facts." MCR 2.517(A)(2). See also *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 176; 530 NW2d 772 (1995). In short, the trial court applied the correct legal standard, and its findings were sufficient to satisfy MCR 2.517.

On appeal, petitioners posit that the circuit court did not comply with MCR 2.517 because the court referred to reasons offered by the superintendent that petitioners believe were contrary to the evidence. For example, petitioners maintain that, contrary to the superintendent's determinations, their relationship with ASF may not continue because their relationship with Damon and Julie is strained, there is no evidence that their age or health will affect their ability to parent ASF, and there is no evidence that Samuel lacked commitment to the adoption of ASF. While petitioners frame these arguments in relation to the trial court's

compliance with MCR 2.517, these arguments actually concern the factual and legal merit of the superintendent's decision, not the adequacy of the trial court's factual findings. That is, the fact that petitioners disagree with the trial court's findings regarding the conflicting evidence does not render the trial court's findings inadequate under MCR 2.517.

In any event, it is clear that the superintendent's opinion and the findings of the trial court were supported by the evidence. For example, evidence was presented that BCS and Slack were aware that Samuel and Damon had an amicable relationship until Damon and Julie were viewed as a prospective adoptive family in lieu of petitioners, at which time the relationship became strained. Given their past amicable relationship, it was not erroneous to conclude that the parties could set aside their differences for ASF's best interests. Further, there was evidence that Samuel lacked commitment to the adoption because he expressed doubts regarding petitioners' long-term ability to care for ASF, and he offered Damon and Julie as alternative adoptive parents. Further, both Damon and Samuel's daughter, Deanna, reported that Samuel did not want to proceed with the adoption. Finally, neither the superintendent nor the trial court concluded that petitioners' ages and health prevented them from caring for ASF. Rather, their age and health were considered as pertinent factors in long-term planning, particularly since Samuel had previously questioned petitioners' ability to permanently plan for ASF in light of Samuel's age. Any conflicts in the evidence were resolved by the superintendent and the trial court, and the trial court's findings were thus supported by the evidence presented.

Recognizing the underlying factual support for the superintendent's determinations, contrary to argu-

ments by petitioners and the LGAL, we also conclude that the trial court did not clearly err when, at the close of petitioners' case, it determined, based on the facts and law, that petitioners were not entitled to relief because they had not shown by clear and convincing evidence that the superintendent's denial of consent was arbitrary and capricious. See MCL 710.45(7); MCR 2.504(B)(2). In particular, petitioners and the LGAL both argue that the superintendent's decision was arbitrary and capricious. They further contend that the decision was discriminatory and a violation of law to the extent that consent to adopt was withheld because of petitioners' ages. We disagree.

Preliminarily, petitioners contend that the superintendent's consideration of their ages violated MCL 722.957(1) and the Michigan Civil Rights Act (CRA), MCL 37.2101 *et seq.* The Foster Care and Adoption Services Act, MCL 722.951 *et seq.*, addresses adoption facilitators and the refusal to provide services. MCL 722.957(1) states, in relevant part:

> Except as provided in subsection (2), an adoption facilitator shall not refuse to provide services to a potential adoptive parent based *solely on age*, race, religious affiliation, disability, or income level. A child placing agency shall not make placement decisions *based solely on age*, race, religious affiliation, disability, or income level. [Emphasis added.]

The CRA prohibits a person from "[d]eny[ing] an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, *age*, sex, or marital status." MCL 37.2302(a) (emphasis added).

In this case, the record clearly establishes that the MCI superintendent did not violate MCL 722.957(1), because he did not withhold consent to adopt *solely* on the basis of petitioners' ages. The superintendent testified that petitioners' ages were only one factor that he considered. He identified many other factors involved in his decision to withhold consent, including petitioners' health, Samuel's vacillation regarding the adoption and his recommendation of Damon and Julie as adoptive parents, and petitioners' ability to maintain the role of grandparents in ASF's life. Thus, there was no violation of MCL 722.957(1). Further, the superintendent's consideration of petitioners' ages did not violate the CRA. The purpose of the adoption code is to provide the *adoptee* with adoption services, to safeguard the adoptee's best interests, and to achieve permanency for the adoptee. MCL 710.21a. The best interests of the adoptee are the overriding concern, and "[i]f conflicts arise between the rights of the adoptee and the rights of another, the rights of the adoptee shall be paramount." MCL 710.21a(b). In this context, the superintendent did not deny petitioners the full and equal enjoyment of a public service because of their ages. See MCL 37.2302(a). Rather, consent for adoption was denied because the superintendent found that adoption by petitioners was not in ASF's best interests in light of a number of factors, including petitioners' ability and willingness to provide long-term care for a then four-year-old child. Indeed, petitioners were first to inject the issue of their ages as a factor to consider. In short, in assessing ASF's best interests, it was not improper, or discriminatory, for the superintendent to consider petitioners' ages relative to their ability to provide for ASF's long-term care.

As we have previously noted, the circuit court did not clearly err by concluding that petitioners did not present clear and convincing evidence to establish that the superintendent's decision was arbitrary and capricious. In a close case such as this one, it is important that we remain mindful of the standard governing our review and that of the circuit court. That is, we are not insensitive to the fact that petitioners indisputably took excellent care of ASF for 3½ years beginning when she was only nine months old, and the fact that ASF is closely bonded to petitioners as well as to her sister, SF. Given ASF's close bond to petitioners and to her sister, who remains in petitioners' care, reasonable minds might well question the wisdom of denying petitioners consent to adopt and of removing ASF from the continuity of a stable family setting. See MCL 710.22(g). But neither this Court nor the circuit court reviews the matter de novo, and it is not for us to say whether the superintendent made the "correct" decision. *Keast*, 278 Mich App at 424-425; *Cotton*, 208 Mich App at 184.

Instead, considering the reasons given for withholding consent, we look at whether the trial court clearly erred by finding that petitioners failed to present clear and convincing evidence that the superintendent acted arbitrarily and capriciously. *Keast*, 278 Mich App at 423-425. "[I]f there exist good reasons why consent should be granted and good reasons why consent should be withheld, it cannot be said that the representative acted arbitrarily and capriciously in withholding that consent even though another individual . . . might have decided the matter in favor of the petitioner." *Cotton*, 208 Mich App at 185. Such is clearly the case here. There may be good reasons why petitioners should have been permitted to adopt ASF. But our focus must be on the reasons given for

denial, and considering those reasons—Samuel's apparent vacillation in his commitment to adoption, petitioners' ages and health in relation to their ability to parent ASF for the long term, as well as the suitability of adoption by Damon and Julie, which will allow for a continued relationship between ASF and petitioners—we cannot find clear error in the trial court's conclusion that petitioners failed to present clear and convincing evidence that the superintendent acted arbitrarily and capriciously.

Moreover, contrary to petitioners' arguments, the superintendent and the trial court considered ASF's individual circumstances, none of which invalidated the denial of consent. See *In re CW*, 488 Mich 935, 936 (2010). Most relevant to the arguments by petitioners and the LGAL, the superintendent acknowledged that petitioners had taken excellent care of ASF for 3½ years, since she was 9 months old. He also recognized that there was a bond between petitioners, SF, and ASF. Neither the superintendent nor the trial court ignored these important facts; rather, in light of other considerations, as previously detailed, the superintendent nonetheless determined that consent to adopt should be denied. While petitioners "may be able to marshal evidence" in opposition to these conclusions, they have not shown by clear and convincing evidence that the superintendent's determinations were "frivolous or fanciful or without factual support." Cf. *Cotton*, 208 Mich App at 186. Under these circumstances, petitioners and the LGAL have not shown that the superintendent acted arbitrarily and capriciously by withholding consent.

When challenging the trial court's grant of the MCI's motion for involuntary dismissal under MCR 2.504(B)(2), the LGAL, in particular, maintains that

the motion was prematurely granted because she was not allowed to present her own case in its entirety before the trial court determined that petitioners were not entitled to relief. Contrary to the LGAL's arguments, a motion under MCR 2.504(B)(2) is properly granted "after the presentation of the *plaintiff's* evidence." (Emphasis added.) The "plaintiff" is the party who commences the action. MCR 2.201(A). A § 45 hearing is commenced by a petitioner who is unable to obtain consent to adopt. MCL 710.45(2). By statute, a "petitioner" is defined as "the individual or individuals who file an adoption petition with the court." MCL 710.22(r). The petitioner initiates a § 45 proceeding by filing a motion alleging that the withholding of consent was arbitrary and capricious, and the petitioner bears the burden of proof during the hearing. MCL 710.45(2) and (7). Samuel and Janet are the petitioners in this case. In contrast, the LGAL is not a "petitioner," and as such, she could not request a § 45 hearing. Further, neither ASF nor the LGAL is an "interested party" in the adoption proceedings. MCL 710.24a(1). The LGAL could not intervene as a party in the proceedings to challenge the withholding of consent. See *In re Toth*, 227 Mich App 548, 555; 577 NW2d 111 (1998); see also MCL 710.21a(e). Instead, petitioners requested the hearing, petitioners were the parties seeking relief, and petitioners bore the burden of proof during the hearing. Consequently, at the close of petitioners' proofs, it was appropriate for the trial court to consider whether petitioners were entitled to relief given the facts and the law, without providing the LGAL an opportunity to present a case separate from petitioners.[5] MCR 2.504(B)(2).

---

[5] We do not suggest that an LGAL is entirely prohibited from participating in a § 45 hearing. There is support for the proposition that,

Moreover, we note that in this case, the LGAL specifically complains that she was not allowed to present additional evidence regarding ASF's attachment to petitioners and to SF, including expert testimony on attachment. However, although the LGAL objected to the MCI's motion for involuntary dismissal, the LGAL failed to make an offer of proof in the trial court regarding this evidence. See MRE 103(a)(2); *Detroit v Detroit Plaza Ltd Partnership*, 273 Mich App 260, 291-292; 730 NW2d 523 (2006). Further, based on the minimal information we have regarding the LGAL's proffered expert witness, additional evidence regarding ASF's attachment to petitioners and to SF would not have altered the outcome; the superintendent testified that he was aware of ASF's attachment to petitioners and to SF, and he acknowledged that because of those attachments, a change in placement would have to be very careful and monitored. Thus, the superintendent and the trial court were plainly aware of ASF's circumstances, and the superintendent did, in fact, recognize that ASF's attachment to petitioners favored granting consent to adopt, but he found that other factors provided good reasons to withhold consent. See *CW*, 488 Mich at 935. Given the good reasons for

when an LGAL has been appointed during child abuse and neglect proceedings, some participation by an LGAL is anticipated during ensuing adoption proceedings that occur during the LGAL's continued representation of the child. See MCL 710.45(5); MCL 712A.17c(9); MCL 712A.17d. See also *In re Row*, unpublished opinion per curiam of the Court of Appeals, issued June 24, 2014 (Docket No. 319389); *In re AEG*, unpublished opinion per curiam of the Court of Appeals, issued November 7, 2013 (Docket No. 316599). This participation does not, however, make an LGAL for an adoptee under age 14 an "interested party" or a "petitioner." See MCL 710.22(r); MCL 710.24a(1). Because the LGAL was not a petitioner or an interested party, the trial court could grant a motion for involuntary dismissal under MCR 2.504(B)(2), before the LGAL completed her presentation of evidence.

denying consent despite ASF's attachment to petition-
ers, it was not sufficient for the LGAL to show that
ASF's attachment to petitioners provided a good rea-
son to grant consent, and thus, even assuming that
the LGAL's evidence would have established good
reasons to grant petitioners consent, such a showing
does not establish that the superintendent acted
arbitrarily and capriciously by withholding consent
for other reasons. See *Cotton*, 208 Mich App at 183-
185. Consequently, even if the LGAL should have
been permitted to present additional evidence, the
LGAL has not shown that ASF was prejudiced by this
denial, and substantial justice does not require rever-
sal of the trial court's decision. See MCR 2.613(A); *In
re Utrera*, 281 Mich App 1, 14; 761 NW2d 253 (2008).

Finally, the LGAL maintains that the trial court
violated ASF's rights to due process and equal protec-
tion by refusing to permit the LGAL to present
evidence and call witnesses at the § 45 hearing. This
cursory argument, made without citation to relevant
authority or application of the law to the facts, is
insufficiently briefed, and we consider it to be aban-
doned. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich
App 379, 406; 651 NW2d 756 (2002). Further, and
without addressing these claims in detail, we note
that the LGAL had notice of the hearing, and she
participated in the proceedings on ASF's behalf by
presenting some evidence and calling a witness to
testify. Under these circumstances, we fail to see how
ASF's due process rights were violated. See *Cum-
mings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d
13 (1995). Regarding the claim that ASF was denied
her right to equal protection, the LGAL failed to even
identify a similarly situated group that was treated
differently than ASF was treated. Thus, this claim

must also fail. See *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318; 783 NW2d 695 (2010).

Affirmed.

HOEKSTRA, P.J., and JANSEN and METER, JJ., concurred.