*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SAVAGE, Minors.

UNPUBLISHED
December 15, 2022

No. 361361
Roscommon Circuit Court
Family Division
LC No. 20-724915-NA

Before: GLEICHER, C.J., and MARKEY and RICK, JJ.

PER CURIAM.

Respondent-father, Kyle Arthur-Mark Savage, appeals by right the trial court order terminating his parental rights to his minor children, SS, KS, and ES, under MCL 712A.19(b)(3)(c)(*i*) (failure to rectify the conditions leading to adjudication), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm to the child if returned to the parent).[1]  Respondent argues that the trial court erred by finding statutory grounds to terminate his parental rights.[2]  We affirm.

## I. BACKGROUND

This case arises, in part, out of allegations of horrific physical abuse against the children by their paternal grandmother and appointed guardian, Diane Savage.[3]  The Department of Health and Human Services (DHHS) filed a petition to remove the children in May 2020.  At the time the petition was filed, the children had been under the care of Diane for approximately three years

---

[1] Respondent-mother's parental rights to the children were also terminated.  However, she is not a party to this appeal.  Unless otherwise indicated, "respondent" as used in this opinion refers to respondent-father only.

[2] On appeal, respondent does not challenge the trial court's determination that termination was in the children's best interests.  Therefore, we only address respondent's challenge concerning statutory grounds.

[3] Respondent and Diane share the same last name.  Therefore, we refer to Diane by her first name.

because respondent was incarcerated for domestic violence. As a result of the allegations in the petition, the children were removed from Diane's care in May 2020, and the guardianship was terminated in June 2020.[4] The trial court conducted respondent's adjudication and dispositional hearing in February 2021. Respondent pleaded to the allegations in the petition and the trial court took jurisdiction of the children. Respondent refused to voluntarily participate in services before adjudication. The trial court ordered respondent to comply with his treatment plan in February 2021.

Respondent's treatment plan identified several needs that he needed to address: substance abuse, parenting skills, domestic relations, and communication and interpersonal skills. The plan required respondent demonstrate the ability to adequately parent his children by using appropriate parenting skills learned. Respondent was required to participate in and benefit from services that increased his skills with anger management, conflict resolution, empathy, and problem solving, including therapy and parenting classes. The plan required respondent to participate in random drug screens and participate and benefit from substance abuse therapy. Respondent was required to learn and demonstrate the ability to state his needs appropriately, participate in a psychological evaluation and follow the recommendations of the therapist, and provide documentation of the domestic violence classes that he had completed. Respondent was also required to communicate with the DHHS and other service providers without hostility or aggression.

In November 2021, petitioner filed a supplemental petition requesting termination of respondent's parental rights to all three children. Petitioner asserted that the children came into care because respondent failed to provide or was unable to provide adequate care and custody of the children while he was incarcerated because he left his children with an unacceptable care provider. Petitioner asserted that respondent failed to comply with or benefit from services and he did not provide proof that he completed services, such as parenting classes, consistent contact with his children, substance abuse screening, employment or adequate housing. Respondent had been incarcerated at various times throughout the pendency of his case. Most recently, in December 2021, respondent was incarcerated and charged with domestic violence, and remained incarcerated at the time of the termination bench trial. On April 1, 2022, after the termination bench trial, the trial court entered an order terminating respondent's parental rights.

This appeal followed.

## II. ANALYSIS

On appeal, respondent argues that the trial court clearly erred by finding sufficient evidence to terminate his parental rights under any statutory ground. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re Smith*, 324 Mich App 28, 46; 919 NW2d 427 (2018) (quotation marks and citation omitted). This Court reviews for clear error the trial court's finding that there are statutory grounds

---

[4] Diane was originally included as a respondent to the petition. However, after the guardianship was terminated, she was removed from the petition.

for termination of a respondent's parental rights. *In re Atchley*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 358502); slip op at 5. "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Smith*, 324 Mich at 43 (quotation marks and citation omitted). Moreover, "[a]ppellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *In re Sanborn*, 337 Mich App 252, 273; 976 NW2d 44 (2021) (quotation marks and citation omitted). "If the trial court did not clearly err by finding one statutory ground existed, then that one ground is sufficient to affirm the termination of respondent's parental rights." *Id*.

The trial court found that grounds for terminating respondent's parental rights were established under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), which authorize termination of parental rights under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> * * *

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

## A. RELATIVE PLACEMENT

Relying on *In re Mason*, 486 Mich 142; 782 NW2d 747 (2010), respondent argues that termination under MCL 712A.19b(c)(*i*) was improper because "relative placement may have been available." We disagree.

"Michigan permits an incarcerated parent to achieve proper care and custody through placement with a relative." *In re Pops*, 315 Mich App 590, 595; 890 NW2d 902 (2016). Our Supreme Court has held that when an incarcerated parent requests placement of his or her children with a relative, "[a]s long as the children are provided adequate care, state interference with such decisions is not warranted." *In re Sanders*, 495 Mich 394, 421, 852 NW2d 524 (2014).

In *In re Mason*, 486 Mich at 160, our Supreme Court held that "[t]he mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." However, the instant case is distinguishable from *In re Mason*. In that case, our Supreme Court held that the trial court "erred in evaluating whether [the] respondent could care for his children in the future, either personally or through his relatives," concluding that termination under MCL 712A.19b(3)(c)(*i*), (g), and (h) was "premature" because the court failed to consider the relative placement of the children. *Id*. at 165. Moreover, "Neither the court nor the DHS properly facilitated [the] respondent's right to participate in the proceedings, ensured that he had a meaningful opportunity to comply with a case service plan, or considered the effect of the children's placement with his family." *Id*. at 169.

In the instant case, the children were removed from Diane as a result of verified horrific abuse allegations. After the children were removed, the DHHS investigated possible relative placements for the children. However, no suitable relative placement was found for all three children.[5]

Respondent identified an aunt and his father and stepmother as a possible placement for the children. Respondent complains that the court erred by finding that no relative offered to place ES because his aunt was willing to take the children into her care. Respondent further complains that there was no evidence that the DHHS followed up with respondent's aunt regarding housing.

Respondent fails to provide context for the court's findings. The court stated: "As to extended relatives we already know that some of the relatives that were offered up, some did not have the housing available. And not a single one offered to take [ES]." The DHHS conducted a home study of respondent's aunt's home and determined that it was not appropriate because it was a one-bedroom apartment and the aunt did not have the financial means to move to larger accommodations in order to provide for the children. See MCL 722.954a(2). The record indicates that the aunt was "unwilling" to relocate to other housing. And, although the aunt stated that she would contact the DHHS if she was able to find appropriate housing, she never contacted the DHHS after the home study. There was no evidence that the aunt moved into an appropriate home that could accommodate all three children. The DHHS also investigated respondent's father and stepmother as a placement. However, they were only willing to take placement of KS, and the record supports the finding that separating KS and ES would cause additional trauma to the children.

---

[5] We note that all three children were initially placed with their maternal grandmother. After the maternal grandmother indicated that she could not care for all three children, KS and ES were ultimately placed in a licensed foster home and SS remained with the maternal grandmother.

There is no evidence that an alternative relative placement with respondent's family was a viable option for placement of the children. Therefore, respondent's argument has no merit.

## B. MCL 712A.19B(3)(C)(I)

Aside from the court's relative placement findings, respondent does not challenge any specific factual finding underlying the court's determination under MCL 712A.19b(3)(c)(*i*). This failure is fatal to respondent's appeal. Because respondent does not challenge this statutory ground on appeal, he has abandoned any argument that the trial court erroneously found that this statutory ground for termination existed. See *In re ASF*, 311 Mich App 420, 440; 876 NW2d 253 (2015) (holding that a party's "cursory argument, made without citation to relevant authority or application of the law to the facts, is insufficiently briefed, and . . . abandoned."). Nonetheless, the trial court did not clearly err by finding that clear and convincing evidence supported termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

The principal condition that led to the children coming under the jurisdiction of the court was physical abuse from Diane. The children were in Diane's care because respondent was incarcerated. Respondent's treatment plan required respondent to address the following issues before reunification could occur: substance abuse, parenting skills, domestic relations, communication and interpersonal skills.[6] The trial court found that termination of respondent's parental rights was appropriate to under MCL 712A.19b(3)(c)(i), in part, because of respondent's unrectified barriers of domestic violence and resulting incarcerations.

At the time the first petition was filed, respondent had been incarcerated for approximately three years as a result of being convicted of domestic violence. Diane was subsequently appointed a guardianship over the children. They remained in her care until DHHS removed them in May 2020. After the children were removed, respondent was released in late May 2020. He became incarcerated again from January 2021, through July 2021. At the time of the termination bench trial, respondent had been incarcerated since December 2021 and, as relevant here, charged with domestic violence.

The court recognized that the availability of services were limited as a result of respondent's continued incarceration and the COVID-19 pandemic. However, the court found that, beyond respondent's incarceration, he had the opportunity to engage in services. Respondent failed to either participate in or benefit from them. We are not definitely and firmly convinced that the trial court erred in regard to its findings. See *In re Smith*, 324 Mich at 43.

The record shows that respondent had a long history of domestic violence and aggressive behavior. While respondent completed a domestic violence program in May 2020, he failed to demonstrate that he benefited from it, as evidenced by respondent's most recent domestic violence charge. Respondent also failed to adequately communicate and appropriately cooperate with the DHHS throughout this case. The foster care worker assigned to this case, Ms. Tiffany Scmeider-Kups, testified that respondent was often "explosive." She expressed concerns about safety

---

[6] Respondent admits that his history of substance abuse and domestic violence issues, and his incarcerations as a result, were conditions that led to the adjudication.

because of respondent's prior threats toward DHHS and other agencies. Although the domestic violence program also addressed anger management, respondent failed to show that he benefited from that service. He exhibited angry outbursts and fury throughout the pendency of the case. Additionally, respondent had sent the children's maternal grandmother "very explosive and aggressive" text messages in the Fall of 2021, before the supplemental petition was filed. Respondent also refused or failed to meet with the DHHS when he was not incarcerated. Although a respondent may participate in all the services offered by the DHHS offered, "mere participation is not the same as overcoming the barriers in place." *In re Sanborn*, 337 Mich App at 274.

Respondent was offered parenting skills courses, but he failed to verify that he completed the courses offered. However, respondent did complete parenting-skills documents while he was incarcerated. Ms. Scmeider-Kups also testified that respondent failed to consistently comply with his parenting visitation. He was defiant and refused to take directives from staff regarding what was inappropriate. For example, respondent made promises to the children, such as telling them he was going to bring them home. Staff warned respondent not to do this because it gave the children false hope. Additionally, the record indicates that respondent would "play" on his cell phone, rather than engaging with his children during some of the visits.

Respondent participated in parenting time at the beginning of the case. However, as time progressed, he failed to confirm parenting time visits. He also failed to participate in multiple scheduled parenting time visits. Additionally, respondent mistakenly believed that it was the DHHS's responsibility to facilitate his transportation to parenting time visits. In September 2021, respondent reported that he did not have a license or vehicle. The DHHS offered respondent gas cards and encouraged him to ask his family members to transport him to parenting time visits if he did not have his own transportation. Respondent wrongly asserted the DHHS should have coordinated respondent's transportation. Further, respondent's parenting time was restricted as a result of his incarcerations, and at the time of the termination trial, he had not participated in any parenting time visits since February 2021.

Complicating the situation, respondent himself suffered from unaddressed trauma. He failed to appreciate this and the potential impact on his children. Because KS and SS had witnessed ES being abused, the children would require intensive therapy to address that trauma before reunification would be possible. Respondent reported that he did not believe his children were subjected to abuse by Diane. There was also testimony indicating that the children had witnessed respondent committing acts of domestic violence. A counselor who assessed the children's trauma opined that, before reunification could occur, respondent must understand how trauma impacts children, which would likely require individual therapy. The counselor also maintained that respondent needed to address his own underlying trauma and substance abuse issues. Respondent had participated in services to address his domestic violence issues and emotional instability, but respondent failed to show that he benefited from these services. Moreover, although respondent reported that he had participated in counseling services, he failed to provide proof of his participation or that he benefited.

Regarding substance abuse, respondent completed an inpatient substance abuse program. As part of this program, he was required to participate in a "continuing recovery plan," which included attending a minimum of three Alcoholics Anonymous (AA) meetings per week. The recovery plan also required respondent to make an appointment with a primary care physician,

secure employment conducive to recovery, and "implement a chemical free lifestyle." Respondent never reported that he attended AA meetings, nor did he provide any documentation that he attended any meetings or had a sponsor. Respondent also refused substance abuse screening and failed to provide documentation for therapy that he allegedly participated in as part of his recovery plan or proof of employment. Respondent also failed to notify the DHHS of positive drug screens that occurred while he was on probation. Additionally, the officer who arrested respondent for his most recent domestic violence charge testified that respondent appeared to be under the influence of methamphetamine at the time of arrest.

Given that more than 182 days had passed since the initial dispositional order and the fact that the children had been in the care of DHHS for nearly two years, it is clear that the "conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*). We conclude that the trial court did not clearly err when it determined that the conditions that led to adjudication continued to exist. Respondent's domestic violence and substance abuse issues, resulting incarcerations, poor parenting skills, and inappropriate communication skills continued to be barriers to reunification. Further, the court did not clearly err when it determined that there was no reasonable likelihood that respondent would be able to rectify these conditions within a reasonable time given the ages of the children. Given the length of time the children were in the care of DHHS, and evidence that respondent participated in some services, but failed to benefit from them, the trial court did not clearly err when it found sufficient evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

Respondent also argues that the trial court erred by finding statutory grounds to terminate his parental rights under MCL 712A.19b(3)(c)(*ii*), (g), and (j), but because the trial court properly terminated respondent's parenting rights under MCL 712A.19b(3)(c)(*i*), this Court need not determine whether termination under other statutory grounds was appropriate. See *In re Sanborn*, 337 Mich App at 273.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Michelle M. Rick

-7-