*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C H-K.

SHANTI TURNER,

      Petitioner-Appellee,

v

C H-K,

      Respondent-Appellant.

UNPUBLISHED
November 22, 2024
2:16 PM

No. 367235
Oakland Probate Court
LC No. 2022-410857-MI

Before: FEENEY, P.J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

Respondent, C H-K, appeals as of right the probate court's order requiring that she receive treatment for mental illness pursuant to Michigan's Mental Health Code, MCL 330.1400 *et seq.* We affirm.

## I. BACKGROUND

Petitioner filed a petition for respondent's involuntary mental health treatment. Reports from clinicians determined respondent suffered from bipolar disorder and post-traumatic stress disorder (PTSD) and posed a danger to herself and others. Based on these reports, and testimony at the petition hearing, the probate court ordered respondent be hospitalized up to 60 days with assisted outpatient treatment no longer than 180 days. This appeal followed.

## II. INVOLUNTARY MENTAL HEALTH TREATMENT

Respondent argues the probate court erred when it found she was a person requiring mental health treatment. We disagree.

-1-

## A. STANDARD OF REVIEW

"This Court reviews for an abuse of discretion a probate court's dispositional rulings and reviews for clear error the factual findings underlying a probate court's decision." *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018) (quotation marks and citation omitted). "An abuse of discretion occurs when the probate court chooses an outcome outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). "A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. (quotation marks and citation omitted). "This Court reviews de novo the proper interpretation and application of statutes and court rules." *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012) (citation omitted). "The probate court necessarily abuses its discretion when it makes an error of law." *In re Portus* at 381. (quotation marks and citation omitted).

## B. ANALYSIS

The probate court found clear and convincing evidence respondent was a person requiring treatment under MCL 330.1401(1)(a) and (c), which define "person requiring treatment" as:

> (a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.
>
> * * *
>
> (c) An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

" 'Mental illness' means a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g). "A judge or jury shall not find that an individual is a person requiring treatment unless that fact has been established by clear and convincing evidence." MCL 330.1465.

> The clear and convincing evidence standard is the most demanding standard applied in civil cases. (quotation marks and citation omitted). Under this standard, evidence is clear and convincing when it produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*In re ASF*, 311 Mich App 420, 429; 876 NW2d 253 (2015) (citation omitted; alterations in original).]

Subsequent to the filing of a petition for involuntary mental health treatment, a hearing was held in the Oakland County Probate Court in which testimony was given by Dr. Atara Abramsky, a fully licensed clinical psychologist, who testified that he interviewed respondent at the hospital, reviewed her medical records, and had discussions with her treatment team at the hospital. He testified that respondent had several mental health disorders "including bipolar disorder . . . and PTSD." Dr. Abramsky, testified that, "these are both substantial disorders of mood and thought." Thus, these diagnoses qualified as mental illnesses pursuant to MCL 330.1400(g) because they are "substantial disorder[s] of thought or mood . . . ."

Consistent with MCL 330.1401(1) (c), the petition alleged respondent was "so impaired by [her] mental illness, and [her] lack of understanding of the need for treatment has caused [] [her] to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration . . . and [respondent] present[ed] a substantial risk of significant physical or mental harm to [] [herself] or others." The lower court record provides evidence confirming those allegations, including a physician certificate by Dr. John Head who noted respondent was "depressed and feeling suicidal [] [she was] irritable and easily agitated[, her] insight and judgment [were] poor [] [and she was] verbally and physically threatening." A physician certificate by Dr. Nagy Kheir confirmed respondent had "suicidal ideations with plan to overdose," and that she was refusing all medications.

Prior to the hearing, the probate court ordered a report to be prepared assessing the current availability and appropriateness of alternatives to hospitalization for respondent, including alternatives available following an initial period of court-ordered hospitalization. In response, a report was issued and signed by Malcolm Hohmann, LMSW, Court Liaison, on July 25, 2023, which suggested, *inter alia*, that respondent had been violent with staff at the hospital and that two of the staff members were sent for medical treatment, that alternatives to hospitalization were not recommended, and recommending hospitalization for 60 days followed by assisted outpatient treatment as follows: balance of 180 days.

At the petition hearing, Dr. Abramsky agreed that respondent's particular disorder can significantly impair her judgment, behavior, capacity to recognize reality and ability to cope with the demands of life. He also stated:

> [T]his hospitalization began because [respondent] was expressing suicidal ideation with plans to harm herself, saying that she wanted to die. She also made some conditionally suicidal statements as she was being evaluated, stating if she had to go back to her AFC home she was going to kill herself.

Further, regarding respondent, he said, "On her bad days, she has been known to be verbally aggressive towards staff. She had an incident where she had to be placed in restraints due to physical aggression." He testified that, within the near future, if she did not receive treatment, she could reasonably be expected to either intentionally or unintentionally injure herself or another and also testified that her impaired judgment and lack of understanding presented a substantial risk of physical harm to herself or others. He agreed that the treatment she was receiving was necessary to prevent relapse or harmful deterioration of her condition. Finally, Dr. Abramsky asked the court to adopt a treatment recommendation with "a course of hospitalization for 60 days, balance of 180

-3-

days assisted outpatient . . . including medication management injectables, assertive community treatment, and supervised living." Although Dr. Abramsky thought that she would probably be able to get out of the hospital sooner than the full 60 days, he believed that 60 days was the appropriate recommendation, just in case it was needed, due to her extensive mental health history and the fact that she had already been hospitalized three times that year.

While analyzing all of the above facts under the requirements of MCL 330.1401(1)(a), and considering them pursuant to the clear and convincing evidence standard described in *In re ASF*, 311 Mich App at 429, we find that the facts produced a firm conviction that respondent could reasonably have been expected within the then near future to intentionally or unintentionally seriously physically injure herself or another individual. As a result, the probate court did not err when it found respondent was a person requiring treatment under MCL 330.1401(1)(a).

Next, the probate court found clear and convincing evidence respondent was a person requiring treatment under MCL 330.1401(1)(c). The petition noted respondent refused psychiatric services, and medications, and often "present[ed] with liable [sic] mood, and angry outbursts [sic]." Further, respondent refused "to see a psychiatrist or physician." Head reported respondent "denie[d] [the] need for treatment." Kheir noted "[Respondent] [was] refusing all medications." Abramsky stated respondent was compliant with her medication while hospitalized, but was unwilling to voluntarily participate in treatment when she was "[i]n the community . . . ."

While analyzing all of the above facts under the requirements of MCL 330.1401(1)(c), and considering them pursuant to the clear and convincing evidence standard described in *In re ASF*, 311 Mich App at 429, we find that the facts produced a firm conviction that respondent was a person requiring treatment; indeed, her judgment was so impaired by the above referenced mental illness, her lack of understanding of the need for treatment had caused her to demonstrate an unwillingness to voluntarily participate in treatment that was necessary, per competent clinical opinions, to prevent a relapse or harmful deterioration of her condition, and she presented a substantial risk of significant physical or mental harm to herself or others. As a result, the probate court did not err when it found respondent was a person requiring treatment under MCL 330.1401(1)(c).

Finally, we note that respondent contends that petitioner could not prove the requirements of MCL 330.1401 because she provided testimony at the petition hearing suggesting both that she comprehended her need for treatment and medication compliance, and that she had been compliant with her medication. Specifically, she said, "I've been taking my meds the whole time," and then indicated that she had been going to a specific mental health treatment center since 2022. However, the record described herein contradicts the assertion that respondent had been compliant with her medication. In addition, it is noteworthy that respondent's statements occurred once she was hospitalized and a medication regimen reestablished. As such, any compliance by respondent was not "voluntary" in the sense it was not self-initiated. And further, based on respondent's history she was unlikely to remain compliant once the structure and oversight of hospitalization or

-4-

community-based supervised placement was removed, as demonstrated by respondent's frequent and repetitive hospitalizations on the basis of her deteriorating mental status when unmedicated.

## III. CONCLUSION

Affirmed.

/s/ Kathleen A. Feeney
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace