# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. RUSSELL, Minor.

UNPUBLISHED
August 23, 2016

No. 331270
Newaygo Circuit Court
Family Division
LC No. 13-008417-NA

Before: SERVITTO, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

Respondent father appeals as of right the trial court order terminating his parental rights to the minor child under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist); (c)(*ii*) (failure to rectify other conditions causing the child to come within the court's jurisdiction); (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm). We affirm.

Father first argues that the Department of Health and Human Services (DHHS)[1] and Bethany Christian Services (BCS) created a conflict of interest by failing to place the minor child with the paternal grandfather and by placing him with foster parents who sought to adopt him. However, father's argument on appeal for this issue is comprised of a few conclusory statements, and he provides no citation to authority for this issue. Therefore, we deem this issue abandoned. See *In re ASF*, 311 Mich App 420, 440; 876 NW2d 253 (2015) (deeming a "cursory argument, made without citation to relevant authority or application of the law to the facts," to be "insufficiently briefed" and "consider[ing] it to be abandoned"). Moreover, we have reviewed this unpreserved argument, and father has not demonstrated plain error. *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000).

---

[1] By Executive Order signed by the Governor on February 6, 2015, the Department of Human Services (DHS) was abolished and its functions merged with the newly created Department of Health and Human Services (DHHS). Executive Order No. 2015-4. Although these proceedings began with "DHS" as the petitioning agency, we refer to DHHS to reflect the current title of the Department.

Next, father challenges the statutory grounds for termination. "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). This Court reviews the trial court's determination for clear error. *Id.*; MCR 3.977(K). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong . . . ." *In re Sours*, 459 Mich 624, 633; 593 NW2d 520 (1999) (quotation marks and citation omitted). Further, this Court gives "deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App at 459.

Termination is appropriate under MCL 712A.19b(g) when "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." "[A] parent's failure to comply with the parent-agency agreement is evidence of a parent's failure to provide proper care and custody for the child." *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003).

Here, without regard to intent, father failed to provide proper care and custody for the minor child due to his incarceration and the fact that he left the minor child in the custody and care of people who were determined to be inappropriate placements. Moreover, the record supports that there was no reasonable expectation that father would be able to provide proper care and custody within a reasonable time considering the minor child's young age. Although father participated in some services, lived at the paternal grandfather's house, and supposedly found work, father failed to comply in other respects; there were still concerns about his housing, and the caseworker was not able to verify father's employment because he did not sign a release. Father's repeated cancellations and unavailability prevented the caseworker, who had concerns about who was living with father, from conducting a second home visit. Father indicated that he was too busy with work to come see the caseworker or to let her come to his home or to sign any paperwork. Although father had not tested positive for drugs since April 20, 2015, the caseworker testified that "there ha[d] not been a lot of drug testing done because he's had very minimal contact." Father failed to provide any documentation that he ever attempted to go to community mental health, and he was unsuccessfully discharged from substance abuse counseling after missing over nine visits. And, part of the parent-agency treatment plan was for father to follow the recommendations in his psychological evaluation. Father was recommended for an evaluation for psychotropic medication, but father never completed the evaluation. See *In re JK*, 468 Mich at 214. Further, father's contact with his caseworker had been minimal since September 2015, and he missed approximately 15 to 16 parenting times leading up to the termination hearing. Given father's lack of contact and his failure to comply with the parent-agency agreement, there was no reasonable expectation that father would be able to provide proper care and custody within a reasonable time considering the minor child's young age. Therefore, we are not left with a definite and firm conviction that a mistake has been made, *In re HRC*, 286 Mich App at 459, and the trial court did not clearly err in finding that there was sufficient evidence to establish this statutory ground. *In re VanDalen*, 293 Mich App at 139. See also *In re Sours*, 459 Mich at 633 ("To be clearly erroneous, a decision must strike [this Court] as more than just maybe or probably wrong . . . .") (quotation marks and citation omitted).

In reaching this conclusion, we note that the record does not support father's argument that DHHS and BCS prevented him from providing proper care and custody of the minor child. The caseworker testified that she looked for and recommended services in father's area when he moved to Weidman, Michigan. Moreover, father was provided gas cards to attend parenting time throughout the case "to make it easier for him to attend." Father was also offered numerous services, which were designed to help in reunification. Thus, father's argument on appeal, which is unsupported by the record, is without merit.

In addition, termination is proper under (j) when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." The likelihood of harm to the child under (j) may be physical or emotional harm, *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011), and "a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home," *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014).

Here, the caseworker testified that father was no closer to reunification than when he was released from jail. Father's noncompliance, as described above, is evidence that the minor child would be harmed if returned to father's home. See *id*. In addition, expert testimony from the minor child's therapist, who was a psychologist, established that the minor child had Disinhibited Social Engagement Disorder, which was caused by inconsistent caregiving during the early years of life. The psychologist testified that she saw "a lack of healthy attachment to early parenting figures" and that the minor child did not have a secure attachment before being placed in foster care. The psychologist further explained that the minor child had "very inconsistent care" before coming into his foster home and did not have his needs met on a regular basis before foster care. Presumably, this lack of attachment and proper care can be attributed, in part, to father's conduct and lack of appropriate parenting before he was arrested and to his absence during incarceration and failure to leave the minor child in the custody of a suitable caretaker. The psychologist was concerned about the minor child because he began to develop a healthy attachment with his foster parents, and it could be detrimental to the minor child if that attachment were broken. Without a healthy attachment, the minor child was likely to suffer from behavioral problems extending into adulthood, which included difficulty controlling emotions, anger issues, relationship problems, lack of friendship, and an inability to relate to peers. Given father's noncompliance, the minor child's previous inconsistent caregiving, and the minor's special need for consistent caregiving based on the lack of healthy attachment to early parenting figures, there was a reasonably likelihood that the minor child would be harmed emotionally or physically if returned to father's care. Therefore, we are not left with a definite and firm conviction that a mistake has been made, *In re HRC*, 286 Mich App at 459, and the trial court did not clearly err in finding that there was sufficient evidence to establish this statutory ground. *In re VanDalen*, 293 Mich App at 139.

In reaching our conclusion, we note that father's reliance on *In re Mason*, 486 Mich 142, 165; 782 NW2d 747 (2010), is misplaced. Here, father's incarceration and criminal record were not the sole reasons for termination. Moreover, as discussed above, there was expert testimony that the minor child had inconsistent caregiving in his early childhood, which led to Disinhibited Social Engagement Disorder, and father was part of his caregiving before his incarceration. Thus, the instant case is distinguishable from *In re Mason*. Because termination needs only to be

-3-

supported by a single statutory ground, we decline to address the additional grounds cited by the trial court in support of termination. See *In re HRC*, 286 Mich App at 461.

Finally, although somewhat unclear, it appears that father argues on appeal that the trial court erred by relying on uncorroborated information in making its best-interest determination. Initially, we note that father bases his argument on an incorrect factual assertion.[2] More importantly, father does not explain or rationalize his position regarding how this information erroneously affected the best-interest determination. We deem father's unclear argument regarding uncorroborated information abandoned. See *In re ASF*, 311 Mich App at 440 (deeming a "cursory argument, made without citation to relevant authority or application of the law to the facts," to be "insufficiently briefed" and "consider[ing] it to be abandoned"). In addition, father's best-interest argument is without merit.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). The minor child—not the parent—is the focus of the best-interest stage. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). In making its determination, the trial court may consider factors such as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. This Court reviews the trial court's decision regarding a child's best interests for clear error. *In re White*, 303 Mich App at 713.

Here, there was expert testimony from the psychologist that she was against reunification in this case because of the circumstances of the case (i.e., the minor child previously did not have an attachment, he subsequently developed an attachment to his foster parents, and "he's been with them for half his life"). As previously noted, the psychologist diagnosed the minor child with Disinhibited Social Engagement Disorder, which was caused by inconsistent caregiving during the early years of life. The psychologist testified that she was concerned given that the minor child was "developing a healthy attachment with his foster parents and if that attachment were to be broken at this point it would make it even more difficult for [him] to develop attachment relationships in the future." According to the psychologist, it was "essential that a child learn to have a healthy attachment because that means he's learned to trust that there's an adult who will take care of him," and, without a healthy attachment, the minor child was likely to suffer from behavioral problems extending into adulthood, which included difficulty controlling emotions, anger issues, relationship problems, lack of friendship, and an inability to relate to peers. Moreover, father had unaddressed mental health issues and a history of substance abuse that was never fully addressed in counseling because of his discharge due to nonattendance, and

---

[2] Father asserts that he had a "presumptive [drug] screen" that was never confirmed with laboratory testing. However, the record indicates otherwise and that the positive drug screen was confirmed with further testing.

he missed numerous visits and had minimal contact with his caseworker leading up to the termination hearing. Further, the minor child's young age increased his need for stability and permanence. Given the minor child's heightened need for stability, permanence, and finality; his bond with and attachment to his foster parents; and father's unaddressed barriers, termination of father's parental rights was clearly in the minor's best interests. And, father's affection and any bond between him and the minor child do not overcome this conclusion. Therefore, the trial court did not clearly err in finding that termination was in the minor child's best interests. *In re Moss*, 301 Mich App at 90.

Affirmed.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher