# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. LANAVILLE, Minor.

UNPUBLISHED
July 19, 2018

Nos. 341343; 341345
Delta Circuit Court
Family Division
LC No. 17-000272-NA

Before: RONAYNE KRAUSE, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

In these consolidated cases, respondents appeal as of right the trial court's order terminating their parental rights to the minor child, CL, under MCL 712A.19b(3)(c)(*i*) (failure to rectify the conditions leading to adjudication), MCL 712A.19b(3)(g) (failure to provide proper care and custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm to the child if returned to the parent). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On January 14, 2017, the Department of Health and Human Services (DHHS) filed a petition against respondents alleging medical neglect, bruising on CL's abdomen, and respondents' failure to address their own mental health needs. After a preliminary hearing, CL, who was 4½ months old and suffered from kidney issues, was removed from respondents' home and placed in foster care. DHHS later filed an amended petition alleging only medical neglect and respondents' failure to address their own mental health needs. Respondents pleaded responsible to the allegations in the amended petition on March 20, 2017, and the trial court implemented a case service plan. The plan required respondents to take a number of different steps before reunifying with CL, including attending CL's medical appointments and participating in parenting classes and mental health treatment. Although it is unclear whether the case service plan required respondent-mother to obtain a driver's license, respondents attributed their failure to take CL to past medical appointments on a lack of transportation, and respondent-mother asserted that she intended to procure a driver's license to ensure reliable transportation.

-1-

At a dispositional review hearing on June 12, 2017, the trial court found that respondents had not been complying with the requirements of their case service plan. Specifically, respondents had not yet obtained counseling or taken adequate steps to address their physical and mental health needs. The trial court stated that respondents had made only "minimal progress," if any, to reunify with CL. However, the trial court extended the case plan in order to give respondents more time to comply. The trial court noted that CL had already been in foster care for five months, a significant amount of time given CL's young age.

By the time of a dispositional review and permanency planning hearing held on September 11, 2017, respondent-mother had yet to obtain her driver's license, and respondent-father had failed to comply with certain discharge instructions in a timely manner after being hospitalized for a heart condition. Both respondents had missed several appointments for services required by their case service plan. Once again, the trial court found that respondents had made only "minimal progress at best," and had failed to comply with their case service plan.

On September 18, 2017, a supplemental petition seeking termination of respondents' parental rights was filed, alleging that respondents had failed to rectify the conditions that led to removal by not complying with the case service plan. The petition also alleged that respondent-father had not taken steps to address his own physical and mental health needs and that respondents were unable to properly care for CL. On November 2, 2017, following a hearing, the trial court ordered termination of respondents' parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j).

## II. ANALYSIS

Respondents argue on appeal that the trial court clearly erred by finding that termination of their parental rights was warranted under MCL 712A.19b(3)(c)(*i*), (g), and (j). Respondents further argue that the trial court clearly erred by finding that termination of their parental rights was in CL's best interests. We disagree.

## A. STANDARD OF REVIEW

This Court reviews for clear error the trial court's findings that there were statutory grounds for termination and that termination was in the child's best interests. *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). In reviewing the trial court's findings, this Court should consider the trial court's special opportunity to evaluate witness credibility. *In re Gach*, 315 Mich App 83, 93; 889 NW2d 707 (2016).

## B. STATUTORY GROUNDS

"In order to terminate parental rights, the court must find that at least one of the statutory grounds set forth in MCL 712A.19b has been met by clear and convincing evidence." *In re Fried*, 266 Mich App at 540-541. The trial court terminated respondents' parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j), which, at the time of these proceedings,[1] provided, in pertinent part:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . :
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

### 1. MCL 712A.19b(3)(c)(*i*)

The trial court did not clearly err when it found that clear and convincing evidence supported termination of respondents' parental rights under MCL 712A.19b(3)(c)(*i*). Under that subsection, termination is proper when "the totality of the evidence" demonstrates that the respondent did not accomplish "any meaningful change in the conditions" that led to adjudication. See *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Additionally, there must be no reasonable likelihood that the conditions will be rectified within a reasonable

---

[1] MCL 712A.19b(3)(g) has since been substantively amended, effective June 12, 2018. See 2018 PA 58.

time. MCL 712A.19b(3)(c)(*i*). Therefore, a proper analysis includes both how long it will take for the respondent to improve conditions *and* how long the child can wait for the respondent's improvement. *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991).

The record shows that respondent-mother failed to obtain a driver's license between the months of March and November 2017, despite her reported plans to do so and respondents' contention that they missed several required appointments because of a lack of transportation. She conceded that she was not comfortable driving, was not a good driver, and required significantly more practice before taking and passing her driver's test. In fact, respondent-mother now believed she no longer needed a license and told her case worker she did not plan to get one. Respondent-mother then proposed relying on relatives and taxis for transportation. But, during the adjudication, respondent-mother explained family members had failed to provide rides because they were working or otherwise unable to assist; she offered no explanation about what had changed. And, given respondents' limited resources, the trial court questioned whether that option was viable. Thus, respondents continue to be impaired in their ability to take CL to medical appointments and, as such, there has been no "meaningful change" in this condition that led to adjudication.[2] See *In re Williams*, 286 Mich App at 272. Likewise, the record demonstrates that respondents had a very poor record in complying with their case service plan; they missed numerous medical appointments for CL and, in most cases, failed to even call ahead to explain their absence. Additionally, respondents stopped attending some services altogether, including counseling. Respondents were also suspended from two programs because of their failure to appear; one of these suspensions was permanent and cannot be rectified. Respondents' failure to comply with the case service plan was not a recent development; the trial court noted it as far back as June 12, 2017, at the first dispositional hearing. Moreover, respondents delayed for several months before they began participating in certain required services. Because respondents' record in complying with the case service plan was poor and continued to be poor, there was no "meaningful change" in these conditions that led to adjudication.

Additionally, the record supports the trial court's finding that the conditions could not be rectified within a reasonable time. A child should not be left in foster care indefinitely while waiting for parental improvement. *In re Dahms*, 187 Mich App at 647. CL was only 4½ months old when he was removed from respondents' care. Because of respondents' failure to comply with the case service plan, he had spent more than half of his life in foster care by the time the termination hearing was held and, yet, little to no change had occurred in the conditions that led to removal. Furthermore, there was little indication that respondents were likely to change their behavior. For example, respondent-mother testified that she and respondent-father had stopped attending counseling and did not intend to go back in the near future.

Respondents argue that because CL's foster parents took him to all of his medical appointments, the allegation of medical neglect had been rectified and could not support termination under MCL 712A.19b(3)(c)(*i*). However, simply because there was no *actual*

---

[2] Respondent-father testified at the disposition review and permanency planning hearing that he was unable to drive because of his medical condition.

medical neglect following CL's removal does not mean that the *condition* that led to adjudication, i.e., respondents' neglect in failing to take CL to his medical appointments, did not continue to exist. The record shows that respondents failed to address the transportation difficulties that purportedly caused them to miss CL's medical appointments before his placement in foster care, nor did they appear to have any meaningful plans to do so within a reasonable time frame. Additionally, the record shows that respondents missed several of CL's appointments *after* he was removed from their care, which is further evidence that this condition continued to exist.

Respondents also argue that their failure to follow the case service plan does not support termination of their parental rights under MCL 712A.19b(3)(c)(*i*) because their compliance with the case service plan was not the condition that led to adjudication.[3] However, in *In re R Smith*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 339478); slip op at 2, 10, this Court held that the respondent's failure to make reasonable progress with a "parent-agency treatment plan"—which was put in place several months *after* the initial petition for removal was filed, and which contained conditions that were not in the petition for removal—supported termination under MCL 712A.19b(3)(c)(*i*). The same holds true here. The trial court took jurisdiction over the matter on the basis of an unfit home environment, by reason of respondents' neglect, and respondents' substantial noncompliance with the case service plan left that condition essentially unchanged.

Respondents additionally maintain that a reasonable time had not passed between the initiation of this case and the termination hearing. We find this argument unpersuasive. As already noted, it is well settled that a child should not be left in foster care indefinitely while waiting for parental improvement. *In re Dahms*, 187 Mich App at 648. While it is true that less than a year had passed between the filing of the initial petition and the later termination, more than half of CL's life had passed since the inception of this case. Additionally, as already discussed, the record supports the trial court's finding that respondents were unlikely to rectify the conditions leading to adjudication within a reasonable time frame.

---

[3] Respondents' suggestion that the contract agencies acted contrary to the court-ordered case plan to reunify the family and sought to "destroy the family" by discussing the possibility of reunifying the child with respondent-mother without respondent-father, is waived and abandoned. MCR 7.212(C)(5); *In re ASF*, 311 Mich App 420, 440; 876 NW2d 253 (2015) (holding that a party's "cursory argument, made without citation to relevant authority or application of the law to the facts, is insufficiently briefed, and . . . abandoned.") And, in any event, this suggestion is without merit because the goal of child protective proceedings is to reunite a child with a fit parent or parents. To this end, statutory termination grounds are evaluated as to each parent individually. See *In re Marin*, 198 Mich App 560, 566; 499 NW2d 400 (1993) ("[U]se of parent in the singular [in § 19b(3)], rather than consistently referring to 'the parents' in the plural, suggests that the Legislature envisioned and intended that the . . . court could terminate the parental rights of just one parent.")

## 2. MCL 712A.19b(3)(g)

Likewise, the trial court did not clearly err when it found clear and convincing evidence to support termination of respondents' parental rights under MCL 712A.19b(3)(g). Under MCL 712A.19b(3)(g), a trial court may terminate parental rights when "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."[4] Noncompliance with a treatment plan is evidence of the respondent's "failure to provide proper care and custody for the child." *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003).

In this case, the record shows that respondent-father missed 26 parenting sessions, was unengaged and disinterested when he did attend, rarely fed CL, and was burdened by numerous health conditions that prevented him from caring for himself, let alone for CL. Furthermore, respondents generally failed to acknowledge that, other than transportation, there were other barriers preventing them from reuniting with CL. Respondents did not believe that their physical and mental health issues affected their ability to properly care for CL, despite evidence to the contrary. Respondent-father's health issues apparently left him unable to care for his own daily needs without assistance and allowances from respondent-mother. While we are not without sympathy for respondents' position, case workers expressed great doubt about whether respondent-mother could take care of respondent-father's needs, her own needs, *and* those of CL. Respondents failed to put forth any substantive evidence demonstrating how they would properly care for CL given the barriers they faced. Further, as previously discussed, the record shows that respondents failed to participate in the case service plan requirements, and there was no indication that respondents would be able to render proper care within a reasonable time.

## 3. MCL 712A.19b(3)(j)

We also discern no error concerning the court's findings regarding MCL 712A.19b(3)(j), which permits termination of parental rights when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." MCL 712A.19b(3)(j). Respondent-mother testified that the only barrier that she believed stood in the way of reunifying with CL was transportation. Despite this, she failed to make any progress toward obtaining her driver's license or otherwise rectifying respondents' transportation difficulties. Without reliable transportation, CL's ability to attend medical appointments was in doubt and could reasonably lead to his harm. However, while transportation was one barrier, it was certainly not the only one. Respondents' participation in mental health services was limited, despite evidence in the record showing that respondents both have mental health issues that inhibit their ability to give proper care to CL. Further, in the

---

[4] As amended by 2018 PA 58, effective June 12, 2018, MCL 712A.19b(3)(g) provides for termination of parental rights if "[t]he parent, *although, in the court's discretion, financially able to do so*, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." (Emphasis added).

months leading to the termination of their parental rights, respondents ceased attending or were suspended from services designed to improve their ability to properly care for CL, such as counseling, supervised parenting sessions, and two parenting skills programs. When respondents scheduled appointments in an attempt to comply with the case service plan, they often missed the appointments because they arranged overlapping sessions or simply forgot to attend. Respondent's disregard of their limitations and the requirements of the case service plan demonstrates a failure to take responsibility and an inability to effectively parent CL.

Respondents argue that the record is devoid of any actual harm coming to CL while in their care and custody; rather, they merely missed four medical appointments before CL was placed in foster care. Therefore, respondents argue, any risk of future harm is merely speculative. However, what respondents' characterize as a mere failure to attend "four precautionary diagnostic medical appointments," can also be seen as a failure to prioritize a serious health concern faced by CL. While it appears that CL did not suffer lasting harm as a result of the missed appointments, respondents' conduct raised legitimate questions about their concern for and ability to protect CL's wellbeing. Even after CL's removal, respondents failed to take steps to attend all of his medical appointments, thereby reinforcing the notion that respondents are either unable or unwilling to adequately respond to CL's needs. Under these circumstances, we agree that there is a reasonable likelihood that CL would be harmed if returned to respondents' care.

In short, we are not left with the definite and firm conviction that the trial court erred in terminating respondents' parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j).

## C. BEST INTERESTS

Finally, respondents argue that the trial court clearly erred by finding that termination of their parental rights was in CL's best interests. We disagree.

Once the petitioner has established a statutory ground for termination, the trial court must order termination of parental rights if the court also finds that termination is in the best interests of the child. MCL 712A.19b(5); *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013). The trial court's best interest determination must be supported by a preponderance of the evidence. *Id*. at 90. When deciding whether termination is in the child's best interests, the trial court may consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). It is also proper to consider evidence that the child is not safe with the parent, that the child is thriving in foster care, and that the foster care home can provide stability and permanency. See *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011).

In this case, the record shows that respondent-father had little to no bond with CL, and, while respondent-mother did have a bond with CL, a case worker testified that this bond was not as strong as that of the foster parents. Moreover, as previously discussed, there is evidence showing that respondents lack the ability to properly parent CL or care for his needs. Additionally, testimony shows that CL is thriving in foster care and that all his needs are being met. A case worker testified that CL needed stability and secure attachment and that CL's foster

parents gave him this environment. Given the reasonable likelihood of medical neglect, there is a risk of harm to CL if he were returned to respondents. The trial court did not clearly err by finding that termination of respondents' parental rights was in CL's best interests.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Anica Letica