*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* H. M. FEDEWA, Minor.

UNPUBLISHED
May 2, 2024

Nos. 366745; 366867
Cass Circuit Court
Family Division
LC No. 20-000167-NA

Before: REDFORD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

In Docket No. 366745, respondent-mother[1] appeals as of right the order terminating her parental rights to the minor child, AF,[2] under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (k) (parent abused child or sibling of child by criminal sexual conduct). In Docket No. 366867, respondent-father appeals as of right the same order, which terminated his parental rights to AF under MCL 712A.19b(3)(c)(*i*), (k), and (m)(*i*) (parent convicted of criminal sexual conduct). We affirm.[3]

---

[1] While there were three minor children in the proceedings below, only the termination of respondents' parental rights to AF is at issue on appeal.

[2] In the lower court proceedings, AF expressed a desire to be referred to as "AF" instead of "HMF." We will therefore refer to AF in this way.

[3] Respondent-mother previously appealed the trial court's orders of adjudication establishing jurisdiction over her three minor children in Docket No. 356783. *In re Fedewa*, unpublished per curiam opinion of the Court of Appeals, issued September 2, 2021 (Docket No. 356783). We affirmed the trial court's orders. *Id*. at p 1.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

These consolidated appeals[4] concern the removal of AF from respondents' home on the basis of AF's allegation that respondent-father sexually assaulted them on several occasions, starting when AF was about seven years old. Respondent-father was convicted for the sexual assaults during the course of the proceedings.

During these proceedings, AF was hospitalized several times for self-harming behaviors and suicidal ideations, which eventually led to AF's placement in a Qualified Residential Treatment Program (QRTP). Evidence presented by petitioner, the Department of Health and Human Services (DHHS), linked AF's harmful behavior to the sexual abuse and respondent-mother's refusal to believe AF's allegations. Respondent-mother maintained contact with respondent-father throughout the proceedings. While respondent-mother demonstrated improvement at times, by the time of the termination hearing, her visitation was suspended. Respondent-father did not participate in the services offered by DHHS while his criminal case was pending, and did not comply with his case service plan after his conviction.

Before the termination hearing, the trial court found AF was unavailable to testify after AF's medical providers testified that doing so would likely retraumatize AF and lead to further self-harm. The four-day termination hearing for both respondents involved testimony from numerous witnesses, including multiple medical providers for AF, caseworkers, and respondent-mother's therapists. Throughout the proceedings, respondent-mother accused AF of lying and manipulating the professionals assigned to AF. By the time of the termination hearing, respondent-mother still did not believe AF's allegations. Respondent-father did not testify or present evidence at the termination hearing. The trial court found statutory grounds existed, and that it was in AF's best interests, to terminate respondents' parental rights. This appeal followed.

Respondent-mother later moved in the trial court to settle the record and for an order vacating the termination order after discovering the videotape recordings from the first two hearings (the preliminary hearings) were "mistakenly deleted," and transcripts from those hearings could not be produced. The trial court ordered that the orders from the preliminary hearings would serve as the settled record. The trial court also supplemented the orders by including reports from the referee who presided over the preliminary hearings identifying the individuals present.

## II. TRIAL ERRORS

On appeal, respondent-mother raises several challenges to the proceedings below. She claims: (1) her due-process right to a meaningful appeal was violated because two transcripts were not produced and a transcript from a different hearing has several "inaudible" notations; and (2) the trial court erred by admitting AF's hearsay statements. We disagree.

---

[4] This Court consolidated the appeals in Docket Nos. 366745 and 366867, both of which arise from the same child-protective proceedings. See *In re Fedewa*, unpublished order of the Court of Appeals, entered July 20, 2023 (Docket Nos. 366745 and 366867).

## A. PRESERVATION AND STANDARD OF REVIEW

Generally, issues that are raised, addressed, or decided in the trial court are preserved for appellate review. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227-228; 964 NW2d 809 (2020); *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). Respondent-mother preserved her argument about the missing transcripts. But, she failed to preserve her challenge to the to the number of "inaudible" notations in the termination-hearing transcripts.

We review de novo the issue of whether a party was denied their due-process right to proper appellate review because of the unavailability of a transcript. See *People v Craig*, 342 Mich App 217, 225-226; 994 NW2d 792 (2022); *People v Jackson*, 292 Mich App 583, 590-591; 808 NW2d 541 (2011). To the extent respondent-mother requests that this Court review the trial court's interpretation of the court rules, we review that issue de novo as well. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). We also review de novo questions of whether the child-protective proceedings complied with a parent's right to due process. *Id.* at 403-404.

Regarding the unpreserved transcript issue, this Court recently clarified that the plain-error test applies to unpreserved claims of error in termination cases. *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 2. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.*; slip op at 2. An error generally affects substantial rights if it causes prejudice, meaning it impacted the outcome of the trial court proceedings. *Id.*; slip op at 2.

Finally, we review for an abuse of discretion a trial court's decision on whether to admit or exclude evidence. *In re Archer*, 277 Mich App 71, 77; 744 NW2d 1 (2007).

## B. TRANSCRIPTS

Respondent-mother asserts she was denied her due-process right to a meaningful appeal because (1) she cannot properly challenge the termination of her parental rights without the mistakenly deleted videotape recordings from the preliminary hearings, and (2) she cannot determine the context of what was said in the transcripts from the termination hearings because they contain numerous "inaudible" notations.[5] We disagree.

Respondent-mother's argument regarding the significance of the missing preliminary hearing transcripts lacks merit. The trial court explained that it did not consider evidence from the preliminary hearings when it terminated respondent-mother's parental rights. Indeed, it did not

---

[5] Respondent-mother appears to imply that she suffered ineffective assistance of counsel in her first appeal to this Court because her appellate counsel did not request the preliminary hearing transcripts. However, aside from a brief expression of concern regarding effectiveness of counsel, respondent-mother provides no argument to support this claim. Therefore, this argument is abandoned. *Johnson v Johnson*, 329 Mich App 110, 126; 940 NW2d 807 (2019) (quotation marks and citation omitted) ("An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims.").

even preside over those hearings. Respondent-mother cannot be deprived of her right to a meaningful appeal, because the record is adequate for this Court to properly evaluate the trial court's reasoning when it terminated respondent-mother's parental rights.

Regarding respondent-mother's argument concerning the "inaudible" notations, we note that, despite asserting this claim on appeal, respondent-mother provides no substantive argument in her appellate brief demonstrating how these "inaudible" notations rendered these transcripts unreliable. Respondent-mother merely contends a verbatim transcript is "crucial" because "[w]e do not know how much or how little something was deemed 'inaudible.' " "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *Johnson v Johnson*, 329 Mich App 110, 126; 940 NW2d 807 (2019) (quotation marks and citation omitted). Therefore, this argument is abandoned, and we decline to consider it now. *Id*.

## C. EVIDENTIARY ISSUES

Respondent-mother next argues that the Michigan Rules of Evidence applied during the termination hearing, because the termination petition was based on new or different circumstances. Therefore, respondent-mother argues the trial court abused its discretion by finding AF was unavailable to testify and terminating respondent-mother's parental rights on the basis of inadmissible hearsay. We disagree.

The Michigan Court Rules set forth two circumstances in which the trial court must apply the evidentiary rules in a dispositional hearing. First, the trial court must apply the rules of evidence at the initial dispositional hearing if the original (or amended) petition contains a termination request. In this circumstance, the trial court may only consider legally admissible evidence when ruling on the statutory grounds for termination. MCR 3.977(E)(1) and (3). Second, the trial court may only consider legally admissible evidence when ruling on the statutory grounds for termination for a supplemental petition requesting termination of parental rights of a child already within the court's jurisdiction "on the basis of one or more circumstances new or different from the offense that led the court to take jurisdiction." MCR 3.977(F)(1)(b). See also *In re Utrera*, 281 Mich App 1, 17-18; 761 NW2d 253 (2008) (explaining that MCR 3.977(F)(1)(b) does not apply when DHHS does not request termination on the basis of changed circumstances). When termination is based on the same circumstances which led the trial court to take jurisdiction, "[t]he Michigan Rules of Evidence do not apply at the hearing, other than those with respect to privileges, except to the extent such privileges are abrogated by MCL 722.631." MCR 3.977(H)(2).

There is no question that respondent-mother's parental rights were not terminated at the initial dispositional hearing. Thus, the first circumstance for application of the Michigan Rules of Evidence is inapplicable. The second circumstance for applying the Michigan Rules of Evidence is also inapplicable, because the termination did not involve any new or different circumstances. While there were some minimal changes between the allegations in the original petition, the trial court's reasoning for taking jurisdiction over the children, and the termination petition, the reasoning underlying each petition and the trial court's reasoning remained the same.

The "primary factor" for removing AF from respondent-mother's care and for taking jurisdiction was the same reason for termination: respondent-mother refused to validate AF's

allegations and refused to participate in services. See *In re Gilliam*, 241 Mich App 133, 137; 613 NW2d 748 (2000) (focusing on the "primary factors" that the trial court relied on when terminating the respondent's parental rights). Therefore, the Michigan Rules of Evidence did not apply to the termination hearing, and the trial court was able to consider hearsay testimony. Because the trial court was able to consider hearsay at the termination hearing, we need not address respondent-mother's arguments regarding AF's unavailability under MRE 804.

We lastly note that respondent-mother argues she had a constitutional right to cross-examine AF, but this is incorrect. Our Supreme Court held that the right to confrontation does not apply in the child-protective context because the Sixth Amendment of the United States Constitution is expressly limited to the criminal context. *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993). The same is true under the language of Const 1963, art 1, § 20, which also applies only to criminal proceedings. Therefore, respondent-mother's Confrontation Clause rights are not at issue.

## III. TERMINATION OF PARENTAL RIGHTS

In Docket No. 366745, respondent-mother argues that the trial court erred by determining statutory grounds existed and it was in AF's best interests to terminate her parental rights. In Docket No. 366867, respondent-father argues the trial court erred by determining it was in AF's best interests to terminate his parental rights. We disagree.

## A. STANDARD OF REVIEW

We review for clear error a trial court's factual findings and ultimate determinations on both the statutory grounds for termination and the best interests of the child. *In re White*, 303 Mich App 701, 709, 713; 846 NW2d 61 (2014); MCR 3.977(K). We will reverse the trial court's decision, even if the evidence supports its findings, if we are "definitely and firmly convinced" that the trial court made a mistake. *Id*.

## B. FOUNDATIONAL LAW

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). Clear and convincing evidence is evidence which:

> [P]roduce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*In re ASF*, 311 Mich App 420, 429; 876 NW2d 253 (2015) (quotation marks and citations omitted; all but first alteration in original).]

"Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *Ellis*, 294 Mich App at 32.

-5-

Once the trial court has concluded that petitioner has established a statutory ground for termination by clear and convincing evidence, it then determines, by a preponderance of the evidence, whether termination is in the best interests of the minor child. *White*, 303 Mich App at 713. See also MCL 712A.19b(5). The trial court weighs a variety of factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *White*, 303 Mich App at 713 (citation omitted). The trial court also considers "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the [child's] well-being while in care, and the possibility of adoption." *Id*. at 714. The trial court may also consider the best-interest factors outlined by the Legislature in the child-custody context. *Medina*, 317 Mich App at 238. One such factor is "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference." MCL 722.23(*i*).

## C. DOCKET NO. 366745—RESPONDENT-MOTHER

### 1. STATUTORY GROUNDS

The trial court terminated respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*) and (k). MCL 712A.19b(3)(c)(*i*) allows for termination of parental rights when 182 or more days have elapsed since the initial dispositional order, and the trial court finds, by clear and convincing evidence, that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

As the trial court noted, more than 182 days had elapsed since the initial dispositional order was entered. The condition that led to adjudication was respondent-mother's failure to protect AF in light of the evidence that respondent-father had sexually assaulted AF. Although AF was removed from respondent-mother's care, there was ample evidence, both before and during the termination hearing, that respondent-mother continued to disbelieve AF and failed to validate AF's consistent allegations of abuse, suggesting respondent-mother's failure to protect AF would persist.

For instance, DHHS provided respondent-mother with several services to address this issue, including psychological counseling, evaluation, and trauma-based training. Respondent-mother participated in many services, but refused to participate in any services concerning sexual abuse. More troubling, respondent-mother was consistent throughout the pendency of this case that she did not believe AF. While there was one review period in which respondent-mother demonstrated some growth, this growth was short-lived, and respondent-mother's failure to believe and support AF was the main barrier to reunification. Respondent-mother also had multiple incidents of inappropriate behavior during visits with AF which ultimately led to her visitation being suspended. Respondent-mother would tell AF that respondent-father would take a polygraph test (which would reveal AF was lying) and that their other relatives did not believe AF either. Multiple witnesses testified that respondent-mother called AF "a manipulating liar [who] had duped many of the professionals" involved in the case. Furthermore, respondent-mother visited respondent-father in prison as recently as November 2022 and maintained a relationship with him, placing AF in danger of additional emotional harm if AF were returned to respondent-mother.

Furthermore, there was no reasonable likelihood respondent-mother would address the issue within a reasonable time frame given AF's age. AF was 16 years old by the time of the termination hearing, and respondent-mother had been given three years to address the condition which led to adjudication—her failure to protect AF—but failed to demonstrate any growth in this area because she still refused to believe AF. Because clear and convincing evidence supported termination under MCL 712A.19b(c)(3)(*i*), we need not consider the other statutory ground. *Ellis*, 294 Mich App at 32.

## 2. BEST INTERESTS

Respondent-mother next argues that termination was not in AF's best interests. But, respondent-mother does not specifically challenge the trial court's best interests findings. Instead, respondent-mother disputes the arguments made by DHHS that termination was in AF's best interests. This Court's review on appeal is for errors made by the *trial court* in finding termination was in a child's best interests. *White*, 303 Mich App at 709. In the absence of any argument by respondent-mother challenging specific findings by the trial court, this argument is abandoned on appeal. *Johnson*, 329 Mich App at 126.[6]

## D. DOCKET NO. 366867—RESPONDENT-FATHER

Respondent-father also argues the trial court erred by finding termination of his parental rights was in AF's best interests. However, his argument is based on a single assertion that termination was not in AF's best interests because termination would result in a loss of familial support, which he contends is necessary for AF to maintain mental stability.[7] This Court will only reverse if we are definitely and firmly convinced a mistake was made. *White*, 303 Mich App at 709. Whether familial support was necessary for AF to maintain stability does not meet this threshold, particularly where the evidence shows it was AF's family members' actions, and inaction, that caused AF's mental instability in the first place. Indeed, AF professed a strong desire

---

[6] We note respondent-mother also argues: "The fact that [respondent-]father was convicted should hold little weight as there is a pending appeal[,]" seemingly implying that respondent-father's criminal convictions would be overturned by this Court. However, this Court has affirmed respondent-father's convictions. See *People v Fedewa*, unpublished per curiam opinion of the Court of Appeals, issued April 18, 2024 (Docket No. 362396). Thus, this argument lacks merit.

[7] The remainder of respondent-father's arguments primarily rely on his belief that AF should be placed with respondent-mother while he is incarcerated. However, this argument necessarily fails, because, as already discussed, respondent-mother's parental rights were also properly terminated. We lastly note, to the extent respondent-father argues termination of his parental rights on the basis of his incarceration was improper, this argument lacks merit. Respondent-father's parental rights were not terminated on the basis of his incarceration, but on the basis of his convictions.

to have respondent-father's parental rights terminated. See MCL 722.23(*i*) (the best-interests factors include the "reasonable preference of the child.").

Affirmed.

/s/ James Robert Redford
/s/ Thomas C. Cameron
/s/ Anica Letica