*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. CLARK, Minor.

UNPUBLISHED
October 15, 2025
10:27 AM

No. 374025
Ingham Circuit Court
Family Division
LC No. 24-000236-NA

Before: WALLACE, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to his biological child under MCL 712A.19b(3)(b)(*i*) (parent's act caused abuse or injury), (g) (failure to provide proper care and custody), (j) (reasonable likelihood of harm if returned to parent), and (k)(*iii*) (abuse included battering, torture, or other severe physical abuse and reasonable likelihood of harm if returned to parent). We vacate the trial court's order terminating respondent's parental rights.

## I. BACKGROUND

The Department of Health and Human Services (DHHS) received a complaint that respondent was abusing his two-month-old child. As part of the Children's Protective Services (CPS) and the Ingham County Sheriff's Department investigations, it was revealed that the child began having unexplained injuries beginning shortly after his birth. The mother reported that her son had a mark on his cheek when he was two weeks old, a mark on his arm when he was six weeks old, and a bite mark on his nipple when he was eight weeks old. She also reported that respondent would take care of the child alone on Friday nights so that she could sleep. During a period of time when respondent was caring for the child, the child's mother witnessed respondent squeezing the child's head under his arm, leaving the child's body to dangle unsupported by the head and neck.

During an interview with law enforcement and CPS, respondent admitted to biting the child's cheek and lip, biting his nipple, squeezing his forearm, and regularly squeezing the child out of anger or frustration to quiet him. During the child's medical evaluation, doctors also

-1-

confirmed that the child had a broken rib and diagnosed that it was the result of child abuse. DHHS filed a petition to remove the child from respondent's care and terminate his parental rights. Respondent pleaded no-contest to biting, pinching, and squeezing the child, but he denied breaking the child's rib and challenged termination of his parental rights. The trial court authorized the petition and suspended respondent's parenting time, and the child remained in his mother's care throughout the proceedings.

At the contested disposition hearing, the child's mother testified that she and respondent had been together for approximately five years, and that their fourth wedding anniversary would occur the following month. She said respondent struggled with anger management and frustration, and that she tried to show respondent how to properly care for the child or deescalate situations in which he felt frustrated. The child's mother acknowledged that respondent bit her during an argument to hurt her. Although she told a detective that respondent had also bitten the family's dog, the child's mother testified at the hearing that she did not actually see him bite the dog—she described an incident in which the dog yelped after respondent held it forcefully after becoming frustrated. The mother testified that she was unable to speak to her husband, due to a no-contact order, meaning that she had been functioning as a single mother for several months. She indicated that the no-contact order had made life difficult, describing incidents that occurred during that time for which she was unable to contact respondent for assistance, including a large tree that fell down in their backyard and their car being stolen. She said that respondent had continued to provide financial support, but that navigating financial issues had been a challenge as she was not even able to contact him about filing income taxes. She testified that she believed, with proper services provided to her husband, that it would be possible to reunite herself and her child with respondent.

The DHHS supervisor in respondent's case testified that respondent's admitted conduct of biting, pinching, and squeezing the child was sufficient for a termination petition, even without evidence of the child's rib fracture. DHHS staff also testified that respondent asked them to communicate with him through his counsel, but DHHS was not able to receive information from respondent's counsel. Respondent's counsel also did not provide DHHS with any report about respondent's voluntary participation in services or progress with anger management. DHHS staff testified that they believed that respondent did not have the capacity or disposition to safely care for the child, and they believed termination was in the child's best interests.

Petitioner and respondent each provided expert witness testimony addressing the child's rib fracture. The doctor that performed the child's medical examination, an expert in child abuse and pediatric critical care, testified that the child's rib fracture was very likely the result of intentional child abuse, and not an injury incurred during birth or by other innocent means. Respondent's expert witness, an expert in pathology that does not treat patients and has no specialized experience in pediatric care or child abuse, testified that the child's rib fracture could have been a birth-related fracture or the result of a vitamin deficiency, connective-tissue disease, or a metabolic condition. The trial court found petitioner's expert witness to be more credible and convincing regarding the likely cause of the child's rib fracture. The trial court concluded there was clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*iii*), and that termination of respondent's parental rights was in the child's best interests. This appeal followed.

## II. ANALYSIS

### A. AGGRAVATING CIRCUMSTANCES AND REASONABLE EFFORTS

Respondent argues that the trial court failed to make a proper judicial determination regarding whether reasonable efforts towards reunification were required in his case and that reasonable efforts were required because aggravated circumstances did not exist.

"In order to preserve an argument that [DHHS] failed to provide adequate services the respondent must object or indicate that the services provided to them were somehow inadequate." *In re Atchley*, 341 Mich App 332, 336; 990 NW2d 685 (2022) (quotation marks and citation omitted). In the present case, DHHS provided no services and respondent raised the issue at the contested dispositional review hearing by examining the child's mother about it (again, the child's mother testified that she believed services would lead to the family being reunited). Respondent also introduced testimony from an expert witness to rebut the allegation that he caused the child to suffer a fractured rib which was offered, in part, to rebut the allegation that aggravating circumstances existed in this matter.

Generally, "the Department has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c), and MCL 712A.19a(2). This affirmative duty requires DHHS to create a case service plan outlining the steps that it and the parent will take to rectify the conditions that led to intervention and achieve reunification. *Id.* at 85-86. However, DHHS is not required to make reasonable efforts to reunify the child and family in cases involving aggravated circumstances identified in MCL 712A.19a(2)(a), as detailed below. *In re Simonetta*, 340 Mich App 700, 707; 987 NW2d 919 (2022). When a trial court has made a judicial determination that a parent has subjected a child to the aggravated circumstances stated under MCL 722.638(1) and (2), the court has no obligation to make a reasonable-efforts finding and does not have to order that reasonable efforts be made to reunify the child and family. MCL 712A.19a(2)(a).

Again, MCL 712A.19a(2)(a) provides that DHHS must make reasonable efforts toward reunification except when there is a judicial determination that the respondent has subjected the child to aggravated circumstances provided in MCL 722.638(1) and (2). MCL 722.638(1) outlines circumstances in which DHHS must submit a petition to terminate a respondent's parental rights at the initial disposition. In relevant part, MCL 722.638(1) provides:

> (1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:

> (a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

> (*i*) Abandonment of a young child.

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

(*iii*) Battering, torture, or other serious physical harm.

(*iv*) Loss or serious impairment of an organ or limb.

(*v*) Life threatening injury.

(*vi*) Murder or attempted murder.

MCL 722.622 indicates that the term "serious physical harm," has the same definition as section 136b of the Michigan penal code. Under MCL 750.136b, " 'serious physical harm' means any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut."

The trial court must find by clear and convincing evidence that aggravated circumstances exist in order to excuse the reasonable-efforts requirement. If the trial court has determined that reasonable efforts are not required because of the existence of aggravated circumstances, it may move forward and terminate a respondent's parental rights only if it also finds that the statutory grounds for termination have been proved by clear and convincing evidence, MCL 712A.19b(3), and that a preponderance of the evidence supports that termination is in the child's best interests, MCL 712A.19b(5). [*In re Barber/Espinoza*, ___ Mich ___; ___ NW3d ___ (2025); slip op at 4 (citations omitted).]

Although respondent pleaded no-contest to biting, pinching, and squeezing the child, he argues that the abuse of the child did not include a fractured rib. More specifically, respondent argues that evidence admitted in the trial court did not constitute clear and convincing evidence that he caused the rib fracture suffered by the child. Thus, defendant essentially argues that the allegations to which he pleaded no-contest, biting, pinching and squeezing the child, none of which required medical treatment, do not meet the requirements for aggravating circumstances under MCL 712A.19a(2)(a).

## 1. PRELIMINARY EXAMINATION

In support of his argument, respondent correctly notes that many of the initial allegations made against him in this matter proved to be untrue, yet petitioner nonetheless moved forward with the argument that aggravating circumstances existed. At the preliminary hearing, a witness for petitioner testified that the child suffered several rib fractures, a thumb fracture, bruising, and injuries from biting. In subsequent hearings, petitioner effectively conceded that the child only suffered one fracture rib, not several, and did not suffer a fracture to the thumb.

Following the preliminary hearing, the referee recommended specific contrary-to-the-welfare and reasonable-efforts findings. The referee's recommendation stated that DHHS was concerned about respondent's admissions of biting and squeezing the child, the child's injuries, respondent's criminal charges, and the possibility that respondent's abuse could be fatal to the child. The referee concluded that the conduct alleged in the petition and respondent's admitted

-4-

conduct constituted severe and intentional abuse under MCL 722.638(1) and that reasonable efforts were not required. In light of these recommendations, the referee also recommended that the trial court authorize DHHS's petition. In authorizing DHHS's petition, the trial court adopted all of the referee's recommended findings in its written order.

## 2. CONTESTED DISPOSITIONAL HEARING

At the contested dispositional hearing, Dr. Guertin testified that he examined the child and found no physical evidence of an abusive injury, at that time. He reviewed the cell phone photograph of the child's arm, which in his opinion depicted three fingernail marks. He eventually also reviewed a bone survey (i.e., x-rays) that showed a rib fracture in a state of healing, but said that "bone health looked otherwise fine." He did not believe the rib fracture was caused by a birth injury because he thought the images depicted hard callus and the window for the appearance of hard callus is 14 to 90 days after injury. He said hard callus would be seen in the vast majority of cases between 21 to 42 days, but it could be present for as long as 90 days.[1] When confronted with the fact that the images were taken when the child was less than 90 days old (he was 74 days old), Dr. Guerin said that usually within the 90-day cutoff, one would not see the hard callus that robust; rather, it would be starting to return to normal rib configuration.

Dr. Guertin was then shown blown-up versions of x-rays taken on March 4, 2024 and agreed that they showed a fracture line on the rib, which was not there on February 15, 2024. He said the rib probably bent again and refractured. Dr. Guertin agreed that the subsequent fracture could not have been caused by respondent if he had no contact with the child after the time of the x-ray on February 15, 2024. Dr. Guertin said that the rib was not completely healed at the time of the February 15, 2024 x-ray, and that the fracture depicted in March was almost certainly less than six days old, because it would have started showing some healing by day 6. Dr. Guertin then agreed that he could not rule out that the child may have had a rib fracture that was not seen on x-ray at the time of birth. But he opined that the circumstances for a rib fracture did not exist because of the mechanism of birth (c-section) and the need for the c-section was not associated with rib fractures for a child of that size. Other factors were also not present—there was no CPR or shoulder dystocia. That said, Dr. Guertin agreed that an infant's rib fracture can be missed, depending upon the angle of the x-rays. He said the March 2024 refracture could have been caused by picking the child up and burping him on that side. He said the refracture is not a sign of abuse due to the vulnerability of a rib that has not fully healed.

On the issue of causation, Dr. Guertin testified that rib fractures, at that age, have an extremely high specificity for abuse, absent disease or obvious gross trauma to the chest. He said he believed the rib fracture was caused by abuse and that "most likely it is the father causing all of the abuse," because he believed the father was always in the child's presence when the bruises appeared and had been found squeezing the child's head. Dr. Guertin's testimony did not support the prior allegations regarding a fracture to the thumb or other rib fractures. He said that squeezing

---

[1] The child was born on December 3, 2023 and the x-rays were taken on February 15, 2024.

of a child that results in rib fractures will consist of one rib fracture in only about 20 to 30 percent of cases.

### 3. TRIAL

At trial, plaintiff called Dr. Douglas Smith as a pathology expert. Dr. Smith indicated that the minimum age of a fracture can be estimated with relative confidence, but because bones can refracture, the maximum date for refractures is difficult to determine. Based upon medical studies he reviewed, Dr. Smith opined that the fracture depicted in the February 15, 2024 bone study was at least six weeks to seven weeks old, but could also date back to the time of birth. He also testified that Dr. Guertin mislabeled the injury by referring to it as a posterior medial fracture when it was actually a posterior lateral fracture. Although Dr. Smith said chest compressions were not used when the child was resuscitated at birth, he said the efforts to resuscitate the child, which had to be done very quickly, including turning the baby over and putting a suction tube in (which makes the child cough and puts pressure on the ribs), could have resulted in a broken rib, i.e., any of this handling of the newborn could have resulted in the fracture.

### 4. SERIOUS PHYSICAL HARM

Under MCL 750.136b, a broken rib falls within the definition of "serious physical harm." But in the present case, petitioner did not prove with clear and convincing evidence that respondent caused the child's broken rib.

> The clear and convincing evidence standard is the most demanding standard applied in civil cases. Under this standard, evidence is clear and convincing when it produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*In re ASF*, 311 Mich App 420, 429; 876 NW2d 253 (2015) (cleaned up).]

The only evidence of a causal link between the rib fracture and the behavior of petitioner comes from the testimony of Dr. Guertin, who said, in his opinion, the rib fracture was caused by abuse and all the abuse was most likely caused by the father. That testimony, by itself, does not meet the burden of clear and convincing evidence.

That said, even if petitioner has not proven that respondent caused the rib fracture, if all of the evidence, considered together, constituted clear and convincing evidence of aggravating circumstances under MCL 712A19a(2)(a), then we would be required to affirm the trial court's finding in that regard. However, when considering the totality of the circumstances, including injuries that respondent admits to causing as a result of biting, squeezing, and pinching the child (none of which required any medical treatment), we find that aggravated circumstances do not exist in this matter, meaning reasonable efforts towards reunification should have been made by the trial court, including the ordering of services.

We hold that the trial courts' finding in this matter, that aggravating circumstances exist pursuant to MCL 712A.19a was clearly erroneous because, while there is evidence to support it,

we are left with the definite and firm conviction that a mistake was made. *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012).

Because we are reversing the trial court's order in this matter, we need not address the other issues raised by respondent.

We VACATE the trial court's December 19, 2024 opinion and order terminating respondent's parental rights and finding that aggravating circumstances exist in this case. We REMAND this case to the trial court for proceedings consistent with this opinion including, but not limited to, reasonable efforts to reunify the child and respondent. We do not retain jurisdiction.

/s/ Randy J. Wallace
/s/ Michael J. Riordan