*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAVANNAH VICTORIA SHAW, also known as
SAVANNAH VICTORIA HART,

UNPUBLISHED
December 16, 2025
11:21 AM

Plaintiff-Appellant,

v

No. 374676
Jackson Circuit Court
LC No. 2019-001496-DM

MATTHEW BENJAMIN SHAW,

Defendant-Appellee.

Before: SWARTZLE, P.J., and O'BRIEN and BAZZI, JJ.

PER CURIAM.

Plaintiff, Savannah Victoria Shaw, also known as Savannah Victoria Hart, appeals of right the trial court's order awarding her and defendant, Matthew Benjamin Shaw, joint physical custody of the parties' minor child and denying plaintiff's motion to change schools. On appeal, plaintiff does not challenge the trial court's denial of her motion to change schools. Rather, she argues that the trial court erred by awarding the parties joint physical custody, violated her right to due process by relying on personal protection orders (PPOs) that were not admitted into evidence, improperly weighed the best-interest factors in MCL 722.23, and erred in its credibility determinations. Plaintiff also asserts that she received ineffective assistance of counsel. For the reasons set forth in this opinion, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The parties were married in March 2013 and had one child together, BS. Plaintiff filed a complaint for divorce in April 2019. In November 2019, the trial court entered a judgment of divorce granting the parties joint legal custody of BS, granting plaintiff physical custody of the child, and granting defendant reasonable and liberal parenting time as agreed upon by the parties. When disputes about parenting time persisted, the trial court entered an order granting defendant specific parenting time. In September 2022, the parties agreed to extend defendant's parenting time. Relevant to the instant appeal, because concerns had arisen that homeschooling the child had resulted in academic and social deficiencies, the parties agreed to the immediate enrollment of BS at Sharp Park Academy in Jackson, where both parties lived.

-1-

In January 2023, plaintiff moved with BS and her daughter from a previous relationship to Lake Orion to live with plaintiff's boyfriend. In August 2024, plaintiff moved for a change in the child's domicile and a change in schools. Defendant opposed the motion and moved for a change in custody, which plaintiff opposed. The competing motions proceeded to a two-day evidentiary hearing.

At the hearing, plaintiff, acting *in propria persona*, acknowledged relocating BS to Lake Orion schools would be more convenient, considering that she made the 90-minute to two-hour trip from their home in Lake Orion to Sharp Park Academy at least four days a week. However, her primary motivation was to have BS attend school in the community where he lived with plaintiff, his half-sister, and plaintiff's partner of nearly three years. Plaintiff also asserted that BS expressed a preference for attending school in Lake Orion.

Plaintiff detailed her disputes with the Sharp Park Academy principal, BS's third-grade teacher, and the superintendent of Jackson Public Schools (JPS). Plaintiff filed a formal complaint with the superintendent against Sharp Park Academy, and, dissatisfied with the outcome, plaintiff posted several TikTok videos criticizing school personnel. Plaintiff also submitted a request under the Freedom of Information Act (FOIA), MCL 15.231 *et seq*., and received e-mails that she interpreted as derogatory toward her and defendant. Plaintiff acknowledged that both the principal and BS's teacher had active PPOs against her, and she claimed that she was denied a hearing to terminate the PPOs because of a concurrent show-cause motion. Plaintiff opposed increasing the child's overnight stays in Jackson and stated that she would consider relocating closer to reduce the commute.

Defendant testified about his residence and home life. Defendant denied any domestic-violence or health issues affecting his parenting, and he said that they did not follow any particular religious observances at his home. Defendant believed that BS was strongly bonded to both parents. Defendant advanced that his attendance at special school events was important to BS. He acknowledged that it would be a struggle to participate as fully in such events if BS went to school in Lake Orion, but defendant implied that he would "make it happen." Defendant also testified about his active involvement in BS's education. He alleged that plaintiff obstructed BS's participation in school events when she knew defendant would be present. Defendant also expressed concern about BS missing school weekly for allergy shots, which he believed were nonessential. Defendant acknowledged that he and plaintiff disagreed about the severity of BS's allergies, and he noted that BS was not required to carry an EpiPen or an inhaler.

It was undisputed that BS was doing well academically and socially at Sharp Park Academy. The principal testified that BS entered second-grade with a significant reading deficiency. With additional instruction, BS was reading at grade level by the end of third grade. The principal described BS as well-behaved and well-liked. She confirmed her PPO against plaintiff and explained that she was compelled to obtain a PPO when plaintiff started making personal attacks against the principal's character in August 2024. BS's teacher also described him as attentive and well-behaved. BS's teacher testified that interactions with defendant were positive, but those with plaintiff were aggressive and persistent. BS's teacher recounted that plaintiff posted derogatory TikTok videos about her and threw papers at her at a school board meeting. The latter incident led to a PPO request by BS's teacher.

After hearing oral argument and taking the matter under advisement, the trial court determined that plaintiff's voluntary move to Lake Orion in January 2023 constituted a change in circumstances sufficient to revisit custody. Turning to the best-interest factors in MCL 722.23(a) through (*l*), the court found that the parties were equal with respect to the following: MCL 722.23(a) (love, affection, and other emotional ties); MCL 722.23(b) (capacity and disposition of each party to give child love, affection guidance); MCL 722.23(c) (capacity and disposition of the parties involved to meet the child's material and medical needs); MCL 722.23(f) (moral fitness); and MCL 722.23(k) (domestic violence). The court noted that it interviewed BS; on the basis that interview, the court determined that MCL 722.23(i) (child's preference) also favored neither party.

The trial court found that the following factors favored defendant: MCL 722.23(d) (length of time the children have lived in a stable, satisfactory environment and the desirability of maintaining continuity); MCL 722.23(e) (permanence, as a family unit, of the existing or proposed custodial homes), MCL 722.23(g) (mental and physical health of the parties), MCL 722.23(h) (home, school, and community record of the child), MCL 722.23(j) (willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party). The court did not make any determinations under MCL 722.23(*l*) (any other factors considered).

Considering these findings, the trial court concluded that defendant demonstrated by clear and convincing evidence that a change in custody was warranted. Accordingly, the court awarded the parties joint physical custody of the child, leaving undisturbed the parties' joint legal custody. The trial court denied plaintiff's motion to change schools and ordered week-on/week-off parenting time as further specified in the order. The court additionally addressed holiday and weekend parenting time, neither of which is relevant to the instant appeal. This appeal followed.

## II. STANDARDS OF REVIEW

On appeal, this Court must affirm all orders and judgments of the circuit court pertaining to a child custody dispute "unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. "The great weight of the evidence applies to all findings of fact." *Vodvarka v Grasmeyer*, 259 Mich App 499, 507; 675 NW2d 847 (2003) (quotation marks and citation omitted). A trial court's finding is against the great weight of the evidence when it is so contrary to the weight of the evidence that it is unwarranted or is so plainly a miscarriage of justice that it would warrant a new trial. *Fletcher v Fletcher*, 447 Mich 871, 878; 526 NW2d 889 (1994).

"An abuse of discretion standard is applied to a trial court's discretionary rulings such as custody decisions." *Vodvarka*, 259 Mich App at 507 (quotation marks and citation omitted). With respect to custody issues, a palpable abuse of discretion exists "when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008).

"Questions of law are reviewed for clear legal error." *Vodvarka*, 259 Mich App at 508 (quotation marks and citation omitted). "Clear legal error occurs when the trial court incorrectly

-3-

chooses, interprets, or applies the law." *Brown v Brown*, 332 Mich App 1, 9; 955 NW2d 515 (2020) (quotation marks and citation omitted). This Court reviews de novo the trial court's application of the law to the facts, *Kaeb v Kaeb*, 309 Mich App 556, 564; 873 NW2d 319 (2015), and "gives deference to the trial court's factual judgments and special deference to the trial court's credibility assessments," *Brown*, 332 Mich App at 8. "A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010).

## III. ANALYSIS

Plaintiff raises several related issues regarding the trial court's custody decision. She first argues that the trial court abused its discretion by excluding her evidence of defendant's medical neglect of the child, particularly with respect to the child's allergies. She then contends that the exclusion of this evidence contributed to the trial court's failure to properly assess and weigh best-interest Factors (b), (c), (d), (h), and (j). These errors led in turn to an erroneous award of joint physical custody to the parties. We find no error that requires reversal of the trial court's order.

Before modifying a custody or parenting-time order, a trial court must first consider whether the moving party has shown by a preponderance of the evidence a proper cause or change of circumstances sufficient. *Vodvarka*, 259 Mich App at 508-509. Once that threshold showing has been made, the court must next consider the child's established custodial environment. *Barretta v Zhikov*, 348 Mich App 539, 552; 19 NW3d 420 (2023). If an established custodial environment exists, then a trial court may not modify its previous judgments or orders so as to change that established custodial environment unless presented with clear and convincing evidence that the proposed order is in the child's best interests. MCL 722.27(1)(c). Evidence is clear and convincing if it is "so clear, direct, and weighty" that the fact-finder can "come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re ASF*, 311 Mich App 420, 429, 876 NW2d 253 (2015) (quotation marks and citation omitted). If no established custodial environment exists, then "the trial court may change custody if it finds, by a preponderance of the evidence, that the change would be in the child's best interests." *Griffin v Griffin*, 323 Mich App 110, 119; 916 NW2d 292 (2018) (quotation marks and citation omitted).

Plaintiff does not dispute the trial court's finding of proper cause or a change in circumstances or that defendant, as the moving party, had to present clear and convincing evidence before the trial court could modify the governing custody order. She also does not challenge the trial court's findings with respect to Factors (a), (e), (f), (g), (i), and (k).

## A. EXCLUDED EVIDENCE

Plaintiff first implies that the trial court erred by excluding documentary evidence that she alleges demonstrates defendant's repeated failure to follow BS's allergy-care regime. The evidence to which plaintiff refers includes letters from BS's allergists stating that the child needed weekly allergy shots, medical records, and an e-mail from plaintiff to defendant asking why he did not inform her that BS got sick on an outing. The record shows that the trial court properly excluded the letters and medical records because they were hearsay and plaintiff failed to establish a foundation for their admission. See MRE 801(c); MRE 802; MRE 803(6). As to the e-mail, it is not clear from the record that plaintiff attempted to enter the e-mail into evidence. Plaintiff

-4-

cross-examined defendant about the substance of the e-mail, then, after coming back from a short break in the proceeding, plaintiff turned her attention to another e-mail that she sent defendant about the same incident. Plaintiff admitted the latter e-mail into evidence. Given this record, we cannot say that the trial court abused its discretion by excluding evidence for which no foundation had been laid and evidence that had not actually been submitted for admission. A trial court's best-interest analysis must rest on admissible evidence. See *Brugel v Hildebrant*, 332 Mich 475, 484; 52 NW2d 190 (1952); see also *Mann v Mann*, 190 Mich App 526, 532; 476 NW2d 439 (1991).

## B. BEST INTERESTS

Plaintiff next argues that, because the trial court did not explicitly address certain evidence favorable to her, the trial court's analysis of Factors (b), (c), (d), (h), and (j), was inadequate and its findings lacked evidentiary support. We disagree.

A trial court must explicitly address each of the statutory best-interest factors in a child custody case, making specific findings and conclusions for each. *Rittershaus v Rittershaus*, 273 Mich App 462, 475; 730 NW2d 262 (2007). Although the court is not required to discuss every piece of evidence or argument in detail, *Baker v Baker*, 411 Mich 567, 583; 309 NW2d 532 (1981), "the record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings," *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005). In the present case, the trial court's findings under best-interest Factors (b), (c), (d), (h), and (j) are sufficient to allow appellate review and are supported by the evidence.

MCL 722.23(b) assesses the parties' capacity and disposition "to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(c) considers, in relevant part, "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care . . . and other material needs." The trial court found the parties equal with respect to these factors. Under MCL 722.23(b), the trial court found that both parties "share[d] a dedicated interest" in BS's education; both had the capacity and disposition to give BS love, affection, and guidance; and neither was involved in an established religion. Under MCL 722.23(c), the trial court found that both parties were "employed and able to provide BS with food, clothing, medical care, and material needs."

Testimony at the evidentiary hearing showed that defendant was familiar with BS's sore-throat issues and allergy treatment, investigated the availability of "take-away" allergy dosages, and sought medical attention when BS became sick while on vacation. This testimony, if deemed credible, established that defendant was attentive to BS's basic medical needs. Although plaintiff presented evidence that she and defendant disagreed on the severity of BS's allergies and illnesses and how they should be treated, and defendant admitted as much, plaintiff's evidence did not indicate that defendant lacked the capacity and disposition to meet BS's basic medical needs and to provide BS with the care necessary, even if it was not the care that plaintiff would have preferred. The trial court's finding under Factor (c) suggests that the court credited defendant's testimony, and plaintiff has given this Court no reason to disregard the trial court's implied credibility assessment. See *Brown*, 332 Mich App at 9. Accordingly, we conclude that plaintiff has not established that the trial court's findings under MCL 722.23 (b) and (c) that both parties

were equal in their capacities and dispositions to give BS "love, affection, and guidance," and to provide him "with food, clothing, medical care . . . and other material needs" were against the great weight of the evidence. See *Fletcher*, 447 Mich at 878.

MCL 722.23(d) considers the "length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." The trial court's finding that this factor favored defendant is additionally not against the great weight of the evidence. See *Vodvarka*, 259 Mich App at 507. Defendant testified at length about the stability and quality of the home and neighborhood environment that BS experienced in Jackson. He supported his testimony with numerous photographs showing his and his fiancée's home, BS's room, and that defendant and BS engaged in recreational activities. Defendant's fiancée interacted well with BS and helped defendant provide BS with artistic and educational opportunities. Defendant testified about his and his fiancée's interactions with the large extended families that each had in the area, the safety of the neighborhood in which they lived, and BS's circle of neighborhood friends. By contrast, plaintiff testified that she lived in several residences since BS's birth, including one residence in Lansing. Plaintiff moved to Lake Orion in January 2023, where she, BS, and plaintiff's daughter lived in a house owned by her boyfriend, plaintiff's third serious partner during BS's lifetime. Apart from having been together with her boyfriend for nearly three years, there is no record evidence about the stability or nature of BS's life in Lake Orion. Under the facts presented in this record, we cannot say that the trial court's finding that Factor (d) favored defendant was against the great weight of the evidence.

Plaintiff asserts that the trial court did not consider her longstanding role as BS's primary care provider and her consistent involvement in BS's schooling and housing. It is true that plaintiff's role as BS's primary caregiver provided a measure of stability to BS's environment. However, given that the parties shared joint legal custody and agreed that BS would attend Sharp Park Academy, plaintiff's move to Lake Orion disrupted BS's environment to the extent that it required a lengthy commute to and from school most days of the week and prevented him from engaging fully in either community. Plaintiff acknowledged that the arrangement was deficient. Further, although plaintiff was involved in BS's schooling, an unsatisfactory environment was created by plaintiff's behavior toward school personnel and JPS. See *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368002); slip op at 6. Notwithstanding her role as BS's primary caregiver, plaintiff provided no evidence that BS had lived with her in a "stable, satisfactory environment" for an appreciable length of time. Given the foregoing, plaintiff has not established that the trial court's finding that MCL 722.23(d) favored defendant was against the great weight of the evidence.

MCL 722.23(h) assesses the child's "home, school, and community record." This Court has affirmed a trial court's finding that Factor (h) favored both parties when a child was doing well academically, both parties helped the child with homework, and the parties supported the school environment. See *Kuebler v Kuebler*, 346 Mich App 633, 684-685; 13 NW2d 339 (2023). In the present case, it was undisputed that BS was doing well academically and socially at Sharp Park Academy, and both parties testified that they helped him with homework. Further, defendant supported BS's school environment at Sharp Park Academy, and his interactions with the staff were reported as appropriate. However, plaintiff did not support the school environment. She believed that the principal, BS's teacher, and the JPS superintendent made derogatory comments about her, and school personnel saw her interactions as aggressive and intimidating. Although BS

was doing well at Sharp Park Academy and both parents were interested in his education, given the environment created by plaintiff's behavior toward school personnel, we cannot say that the trial court's finding that this factor favored defendant was against the great weight of the record evidence.

Lastly, MCL 722.23(j) examines "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent . . . ." Plaintiff's insistence that BS stay with her when he was sick rather than go to parenting time with defendant, tracking BS with an air tag while he was on vacation with defendant, and interjecting herself into defendant's effort to get the child medical care while on vacation arguably signaled to the child that defendant was unable to provide him with adequate care. In addition, taking BS out of school when defendant was scheduled to attend a field day belied plaintiff's willingness to "facilitate and encourage a close and continuing parent-child relationship" between defendant and BS.

Plaintiff contends that Factor (j) should have favored her because of defendant's unwillingness to coordinate with her. In support of her argument, plaintiff relies on three messages that were not part of the lower court record and which plaintiff did not properly attempt to admit at the evidentiary hearing and which we decline to consider on appeal. See *Lamkin v Engram*, 295 Mich App 701, 702 n 2; 815 NW2d 793 (2012). Although it does not appear that plaintiff sought to admit the messages during the evidentiary hearing, the trial court heard testimony about the content of the messages nonetheless. Defendant admitted that he did not timely turn in his preferred summer parenting-time dates for two years in a row, and he acknowledged that plaintiff signed up BS for summer soccer and basketball in Lake Orion. Under the facts presented in this record, the trial court's finding that Factor (j) favored defendant was not against the great weight of the evidence.

## C. CREDIBILITY

Plaintiff further argues that the trial court abused its discretion by overlooking evidence of retaliation and bias in the testimonies of the principal and BS's teacher. We disagree.

We typically give special deference to the trial court's credibility assessments. *Brown*, 332 Mich App at 8. We will not substitute our own judgment for that of the trial court on issues of credibility unless the record demonstrates that the evidence clearly preponderates in the opposite direction, if there is a palpable abuse of discretion, or if there is clear legal error. See *Bowers v Bowers*, 198 Mich App 320, 324; 497 NW2d 602 (1993). The basis of plaintiff's claim of bias is her interpretation of various e-mails that she received as a result of her FOIA request. The trial court in the present case did not make express findings regarding the credibility of the principal and BS's teacher. However, a fair reading of the e-mails that plaintiff had the principal and BS's teacher read into evidence do not support plaintiff's assertion that these two witnesses said derogatory things about her or engaged in retaliation against her.

Plaintiff complains in her brief to this Court that the trial court allowed the principal's and BS's teacher's testimonies but excluded plaintiff's "FOIA and complaint-related documentation." However, some of the e-mails that plaintiff asserts were excluded were, in fact, admitted into evidence. Plaintiff (1) testified extensively that she was the victim of retaliation, (2) called a

witness who opined that JPS had treated plaintiff unfairly, (3) had opportunities to cross-examine the principal and BS's teacher regarding their alleged bias, and (4) admitted into evidence certain e-mails that she implied proved the educators' bias. Accordingly, the issue of bias was squarely before the trial court. The trial court was in a position to judge the credibility of the witnesses before it in light of the documentary evidence that plaintiff relied upon to establish bias, and the trial court impliedly rejected plaintiff's interpretation of the e-mails as support for her claim that the principal and BS's teacher were actively retaliating against her, and, therefore, that their testimony could not be considered credible. We defer to the trial court's implied credibility assessment. See *Brown*, 332 Mich App at 8.

## D. REMAINING ISSUES

Plaintiff raises two additional arguments, neither of which have merit. She argues that the trial court relied on extrajudicial materials created by nonparties and not subject to cross-examination when it explicitly cited PPOs obtained by the principal and BS's teacher as justification for altering custody. Contrary to plaintiff's assertion, the trial court did not rely on or cite the PPOs. The trial court indicated in its analysis of MCL 722.23(g) (mental and physical health of the parties) that plaintiff's admitted mental-health challenges may have factored into her actions toward these educators, which resulted in PPOs being issued against plaintiff in 2024. The focus of the trial court's observation was plaintiff's actions. Both the principal and BS's teacher testified about plaintiff's behavior that caused them to obtain the PPOs, and plaintiff cross-examined both witnesses.

Next, plaintiff contends that she received ineffective assistance of counsel from her retained counsel. Claims of ineffective assistance of counsel may arise in child protective proceedings or cases involving the termination of parental rights. See *In re Casto*, 344 Mich App 590; 2 NW3d 102 (2022); *In re AMB*, 248 Mich App 144; 640 NW2d 262 (2001). However, neither this Court, nor the Michigan Supreme Court, has extended this constitutional protection to custody cases such as the one at issue. See *Haller v Haller*, 168 Mich App 198, 199; 423 NW2d 617 (1988)[1] (ruling that while child custody proceedings are "sufficiently complex to require counsel, this factor alone is insufficient to give rise to a due process right to appointed counsel" considering "a custody decree does not constitute a complete termination of the parental bond," "the element of finality of obligation . . . is not present in a custody proceeding," and, "[a] decree is only effective until the minor attains the age of majority").

## IV. CONCLUSION

For the foregoing reasons, we conclude that plaintiff has not shown that the trial court's findings were against the great weight of the evidence, see *Vodvarka*, 259 Mich App at 507; that the court's discretionary rulings were palpably and grossly violative of fact and logic, see *Berger*,

---

[1] "Although published decisions of this Court issued prior to November 1, 1990, are not strictly binding upon us, all published decisions of this Court are precedential under the rule of stare decisis and generally should be followed." *Stoudemire v Thomas*, 344 Mich App 34, 41 n 2; 999 NW2d 43 (2022).

277 Mich App at 705; or constituted clear legal error, see *Vodvarka*, 259 Mich App at 508; MCR 2.613. Therefore, we are compelled to affirm the trial court's order granting the parties joint physical custody. See MCL 722.28.

Affirmed.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Mariam S. Bazzi